GLENN N. BOWERS *v.* WARDEN, CONNECTICUT CORRECTIONAL INSTITUTION, SOMERS (7474)

DALY, O'CONNELL and FOTI, Js.

Argued May 18—decision released August 22, 1989

*Michael O. Sheehan,* for the appellant (petitioner).

*James M. Ralls,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Jane Emons,* assistant state's attorney, for the appellee (respondent).

O'CONNELL, J. The petitioner appeals from the judgment of the trial court dismissing his petition for a writ

of habeas corpus. In 1981, the petitioner pleaded guilty to murder in violation of General Statutes § 53a-54a. In 1988, he filed a petition for a writ of habeas corpus.

On appeal, the petitioner contends that his guilty plea was not knowingly, intelligently and voluntarily made (1) because he was not informed of the nature of the charge to which he pleaded, and (2) because he did not understand the mandatory minimum sentence he could receive. We find no error.

We note, at the outset that, " 'collateral attacks on judgments are not favored.' " *Oppel* v. *Lopes,* 200 Conn. 553, 555, 512 A.2d 888 (1986), quoting *State* v. *Wright,* 198 Conn. 273, 283, 502 A.2d 911 (1986). In order to prevail in such an attack, the petitioner "must demonstrate a miscarriage of justice or other prejudice and not merely an error which might entitle him to relief on appeal. *Hill* v. *United States,* 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d 417, reh. denied, 369 U.S. 808, 82 S. Ct. 640, 7 L. Ed. 2d 556 (1962)." *D'Amico* v. *Manson,* 193 Conn. 144, 156–57, 476 A.2d 543 (1984). The petitioner must show the existence of a "fundamental defect which inherently results in a complete miscarriage of justice . . . an omission inconsistent with the rudimentary demands of fair procedure"; *Hill* v. *United States,* supra; or the presence of " 'exceptional circumstances where the need for the remedy afforded by the writ of the habeas corpus is apparent.' " Id., quoting *Bowen* v. *Johnston,* 306 U.S. 19, 27, 59 S. Ct. 442, 83 L. Ed. 455 (1939).

General Statutes § 53a-54a provides that "[a] person is guilty of murder, when, with intent to cause the death of another person, he causes the death of such person . . . ."

In his first claim, the petitioner argues that his guilty plea was not based upon a proper understanding and explanation of the charges against him because the trial

court, in its plea canvass, inquired whether he intended to "shoot" the victim, as opposed to whether he intended to "kill" the victim, as required by § 53a-54a.

The petitioner's arguments presume that this inquiry was his sole source of knowledge of the intent to kill element of murder. This is not the situation. The record before the habeas court disclosed that the petitioner was present when the intent to kill element was explained to the grand jury. He also heard the indictment, which contained that same element, read at both the grand jury and at the plea proceedings. Moreover, the trial court, in its plea canvass, specifically asked the petitioner, "Do you understand that you have been charged with, that is, the crime of murder, and what is involved in the charge itself?" He responded, "Yes, I do."[1] In addition, the two attorneys who represented the petitioner at the plea proceeding both testified at the habeas trial that they had each explained the elements of the offense to the petitioner before he pleaded guilty. One of them stated that he defined murder to

---

[1] The following colloquy transpired after the prosecution read a statement of facts surrounding the shooting:

"The Court: Mr. Bowers, do you agree with the facts that the state's attorney has just related to the court?

"[Defense Counsel]: Okay, tell the judge that you shot him four times.

"The Defendant: I believe it was four times that I shot him and them statements that he have, I disagree with that.

"[Defense Counsel]: But did you shoot the victim?

"The Defendant: Yes, I did.

"The Court: All right. And when—

"[Defense Counsel]: Did you shoot him with a gun?

"The Defendant: Yes, I did.

"Defense Counsel: Did you shoot him at least three times?

"The Defendant: Yes.

"The Court: And when you aimed the gun, did you intend to shoot him?

"The Defendant: Yes.

"The Court: All right. So that you do admit that you did commit the crime of murder?

"The Defendant: Yes, I do."

the petitioner as "an intentional killing of a human being." The habeas court, in its memorandum of decision, found this testimony to be credible.

A habeas court, as well as a trial court, may properly rely on the defense attorney's representations, as well as the responses of the petitioner at the time he responded to the trial court's plea canvass, in determining that he was adequately informed of the elements of the offense charged. See *State* v. *Williams,* 203 Conn. 159, 170, 523 A.2d 1284 (1987). Thus, in light of the foregoing, this is not a situation where we are precluded from presuming that defense counsel had explained the intent element of murder in sufficient detail to give the petitioner notice of what he was admitting. *Oppel* v. *Lopes,* supra, 557; see also, *State* v. *Hackett,* 16 Conn. App. 601, 603, 548 A.2d 16 (1988). As a result, we are satisfied that the habeas court properly concluded that the petitioner was adequately informed of the elements of the offense charged and that his guilty plea was knowingly, intelligently and voluntarily made.

In his second claim, the petitioner asserts that his guilty plea was not based upon a proper understanding and explanation of the possible indeterminate sentence to which he was exposed. We disagree.

Pursuant to General Statutes § 53a-35,[2] the crime of murder required the trial court to impose an indeterminate sentence and carried a minimum term of any period not less than ten years nor greater than twenty-five years and a maximum term of life imprisonment.

---

[2] The petitioner pleaded guilty to the crime of murder, a class A felony. General Statutes § 53a-35 provides in pertinent part: "IMPRISONMENT FOR ANY FELONY COMMITTED PRIOR TO JULY 1, 1981: INDETERMINATE SENTENCES; MAXIMUM AND MINIMUM TERMS. (a) For any felony committed prior to July 1, 1981, the sentence of imprisonment shall be an indeterminate sentence, except as provided in subsection (d). When such a sentence is

There was no plea agreement in this case and the trial court sentenced the petitioner to seventeen years to life.

The transcript of the trial court's plea canvass discloses that it asked the petitioner if he was aware of the possible range of penalties for the offense charged and if his attorney discussed those possible penalties with him. The petitioner responded affirmatively. The trial court then told the petitioner that the mandatory minimum sentence was ten to twenty-five years and the maximum would be life. The petitioner unequivocally acknowledged that he was aware of his exposure under the sentencing statute.[3]

The petitioner testified at the habeas trial that he did not understand at the time of pleading guilty that he was exposed to a minimum mandatory sentence of ten years to life imprisonment. Rather, he believed he was exposed to a minimum sentence of ten to twenty-five years. As a result, he argued that the trial court's canvass was deficient because it failed to indicate that any sentence under § 53a-35 required life imprisonment as an essential component.

The habeas court disagreed with the petitioner's theory and ruled that the trial court's explanation of the

imposed the court shall impose a maximum term in accordance with the provisions of subsection (b) and the minimum term shall be as provided in subsection (c) or (d).

"(b) The maximum term of an indeterminate sentence shall be fixed by the court and specified in the sentence as follows: (1) For a class A felony, life imprisonment . . . ."

"(c) Except as provided in subsection (d) the minimum term of an indeterminate sentence shall be fixed by the court and specified in the sentence as follows: (1) For a class A felony, the minimum term shall not be less than ten nor more than twenty-five years . . . ."

[3] The following colloquy transpired between the trial court and the defendant:

"The Court: All right. Now, Mr. Bowers, are you aware of the possible range of penalties for this offense of murder?

range of the petitioner's exposure was legally correct. We agree. The trial court's explanation was unambiguous. The petitioner would have this court distort that clear language to reach a result in his favor. We will not do so.

There is no error.

In this opinion the other judges concurred.

"The Defendant: Yes, I am.

"The Court: All right. And has your attorney discussed that with you, what the penalties could be?

"The Defendant: Yes.

"The Court: And are you aware of the mandatory minimum sentence for this offense, which would be ten to twenty-five years or a maximum of life?

"The Defendant: That's the minimum?

"The Court: The minimum would be ten to twenty-five years?

"The Defendant: Oh, okay.

"The Court: *The maximum would be life. Are you aware of that?*

"The Defendant: *Yes.*" (Emphasis added.)