STATE OF CONNECTICUT *v.* JAMES R. SILVA
(AC 20951)

JAMES R. SILVA *v.* COMMISSIONER OF CORRECTION
(AC 20317)

Landau, Dranginis and Healey, Js.

Argued December 13, 2000—officially released August 28, 2001

*Deborah G. Stevenson*, special public defender, for the appellant (defendant in the first appeal, petitioner in the second appeal).

*Lawrence J. Tytla*, senior assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, state's attorney, and *Paul E. Murray*, supervisory assistant state's attorney, for the appellee (state in the first appeal, respondent in the second appeal).

*Opinion*

DRANGINIS, J. This case involves the resolution of two appeals by the defendant, James R. Silva.[1] The

---

[1] The cases were not consolidated on appeal, but were heard together because the issues on appeal arise from the same factual basis. See *State* v. *Sanabria*, 192 Conn. 671, 673, 474 A.2d 760 (1984); *Anderson* v. *Litchfield*, 4 Conn. App. 24, 25 n.2, 492 A.2d 210 (1985).

defendant's direct appeal is from the trial court's judgment of conviction rendered after a plea of guilty, pursuant to the *Alford* doctrine,[2] of murder in violation of General Statutes § 53a-54a.[3] The defendant claims that the trial court improperly accepted his guilty plea (1) without substantial compliance with Practice Book §§ 39-19 and 39-20, and (2) because his will was overborne by coercion, thereby violating his right to due process and his privilege against self-incrimination as provided by the fifth and fourteenth amendments to the United States constitution and article first, § 8, of the constitution of Connecticut.

The defendant's second appeal is from the judgment rendered after a trial to the habeas court on his petition for a writ of habeas corpus in which he sought, inter alia,[4] to have his appeal rights reinstated, long after his

---

[2] *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). "A defendant who pleads guilty under the *Alford* doctrine does not admit guilt, but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea." *Henry* v. *Commissioner of Correction*, 60 Conn. App. 313, 315 n.1, 759 A.2d 118 (2000).

[3] General Statutes § 53a-54a provides: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a) of this section, on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony or murder under section 53a-54d."

[4] See footnote 14.

conviction, and to have his conviction vacated because (1) his guilty plea was made involuntarily and unknowingly, and (2) he did not receive effective assistance of counsel. The habeas court reinstated the defendant's right to a direct appeal,[5] but was unpersuaded by his arguments directed at vacating the judgment of conviction. On appeal, the defendant claims that the habeas court improperly found that his plea was made voluntarily and knowingly, and that trial counsel did not render ineffective assistance.

The following factual basis is necessary to resolve these appeals. On April 17, 1994, at approximately 9:30 p.m., New London police responded to a reported shooting. The police investigation led to the arrest of the defendant on April 21, 1994, for the murder of Albert Goss III.[6] The defendant and the victim knew each other as friends. The defendant went to the victim's home, carrying a loaded semiautomatic pistol, to confront him about a relationship the victim was having with the defendant's girlfriend. The defendant also took with him several friends as backup. When the victim came outside, a verbal argument ensued in front of the victim's home. At some point, the defendant threw his weapon to the ground. The victim returned inside and told his mother that "Jimmy was in the project with a gun and she should call the police." The victim returned outside where the argument continued. The defendant picked up his gun. The defendant told his companions that the victim had a knife. Ultimately, the victim received a gunshot wound to the chest and stumbled

[5] The habeas court reinstated the defendant's right to a direct appeal on the basis of his trial counsel's testimony that he did not recall discussing an appeal with the defendant and that court records did not indicate that the defendant had been informed of his right to appeal. The defendant's present direct appeal is a result of that reinstatement.

[6] Police also charged the defendant with possession of a pistol without a permit in violation of General Statutes § 29-35. The state nolled that charge at the time of his guilty plea.

back into the apartment, stating, "[H]e shot me . . . Jimmy shot me." He died a short time later. The defendant fled the scene, and the gun was never recovered.

Initially, the defendant maintained his innocence and denied that he was the person who shot the victim. On May 17, 1995, the day the case was to come to trial, the defendant pleaded guilty. The court canvassed the defendant and, having found that the defendant's plea was made "knowingly, intelligently, and voluntarily with full understanding of the crime charged and the possible consequences of the pleas as well as with adequate advice and assistance of counsel," the court accepted his plea. On June 28, 1995, the defendant was sentenced to thirty years imprisonment in accordance with the state's recommended sentence offered pursuant to its plea agreement with the defendant. The defendant's appeals followed. Additional facts and procedural history will be set forth as necessary to address the defendant's claims.

I

In his direct appeal, the defendant claims that the trial court improperly accepted his guilty plea under the *Alford* doctrine. He claims that the court failed (1) to comply with our rules of practice, (2) to state correctly the punishment for the crime, (3) to determine whether the defendant had notice of the true nature of the charge against him, (4) to conduct sufficient colloquy to determine if the plea was voluntary and (5) to conduct sufficient inquiry to determine if the defendant's plea resulted from coercion in light of his precarious mental state. We affirm the judgment of the trial court.

The defendant concedes, as he must, that he did not preserve his claims for appeal by moving to withdraw his plea prior to sentencing pursuant to Practice Book

§ 39-27. He seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

Under the *Golding* doctrine, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40.

"In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." Id., 240. "The first two prongs of *Golding* address the reviewability of the claim, and the last two involve the merits of the claim." *State* v. *Brown*, 56 Conn. App. 26, 31, 741 A.2d 321 (1999), cert. denied, 252 Conn. 927, 746 A.2d 790 (2000).

The defendant's claims that his plea was not knowingly and voluntarily made are appropriate claims for constitutional review pursuant to the *Golding* doctrine. *State* v. *Peterson*, 51 Conn. App. 645, 654, 725 A.2d 333, cert. denied, 248 Conn. 905, 731 A.2d 310 (1999); *State* v. *Domian*, 35 Conn. App. 714, 719, 646 A.2d 940 (1994), aff'd, 235 Conn. 679, 668 A.2d 1333 (1996). Because the defendant's claims are of constitutional magnitude and the record is adequate for review, we will review each of his claims in turn.

A

The defendant first claims that the trial court failed to comply strictly with Practice Book §§ 39-19 and 39-

20 during its canvass of him and, therefore, improperly accepted his guilty plea in violation of his due process rights under the federal and state constitutions. Specifically, he claims that the court did not canvass him concerning § 39-19 (3), which provides that the court must determine that the defendant understands "[t]he fact that the statute for the particular offense does not permit the sentence to be suspended . . . ." He also claims that the court did not canvass him as required by Practice Book § 39-19 (5) and that he had the right to the assistance of counsel if he would have proceeded to trial.

"The United States Supreme Court has held that for the acceptance of a guilty plea to comport with due process, the plea must be voluntarily and knowingly entered. *Boykin* v. *Alabama*, 395 U.S. 238, 243–44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)." *State* v. *Carter*, 243 Conn. 392, 397, 703 A.2d 763 (1997). "We are bound by our Supreme Court's decision in [*State* v. *Badgett*, 200 Conn. 412, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986)], which requires us to focus our inquiry on whether the federal constitutional principles of [*Boykin* v. *Alabama*, supra, 243] were satisfied rather than on meticulous compliance with the provisions of the Practice Book. . . . *Boykin* requires that before accepting a defendant's plea, a trial court must inform him of three core constitutional rights: His right to be free of compulsory self-incrimination, and his rights to a jury trial and to confront his accusers." (Citation omitted; internal quotation marks omitted.) *State* v. *Williams*, 60 Conn. App. 575, 581, 760 A.2d 948, cert. denied, 255 Conn. 922, 763 A.2d 1043 (2000).

"[T]he determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all of the relevant circumstances [and] the plea may satisfy constitutional requirements even in the

absence of literal compliance with the prophylactic safeguards of [Practice Book §§ 39-19 and 39-20]." (Internal quotation marks omitted.) *State* v. *Johnson*, 253 Conn. 1, 44, 751 A.2d 298 (2000).

In this case, the trial court never expressly informed the defendant that his sentence was nonsuspendable. That fact alone, however, is not dispositive of the defendant's claim. See id., 44–45 (trial court's failure to inform defendant of mandatory minimum sentence alone did not render plea involuntary or unknowing). Rather, in light of all the circumstances surrounding the defendant's plea, including the court's repeated references to his plea agreement and statements that he would have to serve a thirty year sentence if his plea was accepted, we conclude that the defendant fully understood the consequences of his plea and that the court's failure to inform him that his sentence was not suspendable did not undermine the voluntariness of his plea. See *State* v. *Gray*, 63 Conn. App. 151, 159, 772 A.2d 747 (plea knowingly and voluntarily entered when defendant knew maximum sentence for charged offenses), cert. denied, 256 Conn. 934, 776 A.2d 1151 (2001); *State* v. *Peterson*, supra, 51 Conn. App. 658, (plea knowing and voluntary where court advised defendant he " 'could face as long as forty-five years imprisonment' ").

With respect to the defendant's claim that the court failed to inform him that he had the right to counsel if he chose to proceed to trial, we conclude that his claim is without merit.

In this case, the defendant was represented by counsel during the course of pretrial proceedings and the proceedings in which he entered his *Alford* plea. In fact, the defendant and his counsel were prepared to go to trial on the same day that the defendant entered his plea.

The trial court discussed with the defendant whether he understood the consequences of his plea, including that the trial would not ensue. There also is no indication that trial counsel did not intend to proceed to trial on the defendant's behalf. A similar claim under virtually identical facts was made in *State* v. *Badgett*, supra, 200 Conn. 412, in which the Supreme Court stated that "[i]t would defy reality to suppose that [the defendant] had any doubts about his continued right to assistance of counsel had he not elected to enter the conditional plea." (Internal quotation marks omitted.) Id., 420–21 n.7. The present case is indistinguishable from *Badgett* with respect to the defendant's claim. Consequently, we reject the defendant's claim that his plea was involuntarily or unknowingly entered because of the trial court's failure to inform him of his right to the continued assistance of counsel if he proceeded to trial.

B

The defendant next claims that the court incorrectly stated the maximum punishment for the crime. He argues that it was plain error[7] for the court to inform the defendant that he could be subject to a maximum penalty of sixty years imprisonment and a $10,000 fine when the statute does not provide for the possibility of a fine. We disagree.

"To prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not implicated and review of the claimed

[7] See Practice Book § 60-5. The defendant does not argue that the court's failure to state correctly the maximum punishment for the crime is reviewable under the *Golding* doctrine. "[I]t is not appropriate to engage in a level of review that is not requested." (Internal quotation marks omitted.) *Ghant* v. *Commissioner of Correction*, 255 Conn. 1, 17, 761 A.2d 740 (2000). Therefore, our review of the defendant's claim is limited to whether the court committed plain error.

error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Furthermore, even if the error is so apparent and review is afforded, the defendant cannot prevail on the basis of an error that lacks constitutional dimension unless he demonstrates that it likely affected the result of the trial." (Internal quotation marks omitted.) *State* v. *Bradley*, 60 Conn. App. 534, 546, 760 A.2d 520, cert. denied, 255 Conn. 921, 763 A.2d 1042 (2000).

The state correctly points out that the maximum punishment for the crime of murder, a class A felony, actually carries the possibility of a fine not to exceed $20,000.[8] The court, therefore, inaccurately informed the defendant regarding the fine that may be imposed for murder. As we have discussed, however, "[t]here is nothing in the record of the trial court proceedings to suggest that the defendant was unaware of the *actual* sentencing possibilities and, further, that even if his understanding of the possible sentencing alternatives was less than perfect, the record does not support a claim that any additional information would have made a difference in his decision to plead guilty." (Emphasis added; internal quotation marks omitted.) *State* v. *Johnson*, supra, 253 Conn. 45. We also find it significant that the plea agreement in this case did not contemplate a fine. See *State* v. *Rish*, 17 Conn. App. 447, 452, 553 A.2d 1145 (trial court's failure to inform defendant of maximum fine that could have been imposed not defective compliance where plea agreement did not contemplate fine), cert. denied, 211 Conn. 802, 559 A.2d 1137, cert. denied, 493 U.S. 818, 110 S. Ct. 72, 107 L. Ed. 2d 38 (1989). Rather, the plea agreement in this case contemplated a thirty year sentence and the court repeatedly informed the defendant that if it accepted

---

[8] See General Statutes § 53a-41.

his plea, a thirty year sentence would be imposed. See *State* v. *James*, 197 Conn. 358, 364, 497 A.2d 402 (1985).

Accordingly, the trial court's failure to inform the defendant of the precise amount of the fine that could have been imposed, on the facts of this case, does not constitute plain error. Because the record clearly discloses that the defendant had actual knowledge of the maximum consequences of his plea, we conclude that his plea was properly accepted.

C

The defendant argues that the trial court did not inform him of the true nature of the charge against him because, although it informed him that murder is an intentional killing, it failed to explain that intent was an element that the state had to prove beyond a reasonable doubt for a jury to find him guilty.

It is well established that "[i]n order for a plea to be voluntary, it is necessary for the defendant to have real notice of the true nature of the charge against him . . . . It is, however, appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." (Citation omitted; internal quotation marks omitted.) *Ghant* v. *Commissioner of Correction*, 255 Conn. 1, 16, 761 A.2d 740 (2000).

"Our courts have stopped short of adopting a per se rule that notice of the true nature of the charge always requires the court to give a description of every element of the offense charged. . . . The trial court's failure to explicate an element renders the plea invalid only where the omitted element is a critical one . . . and only where it is not appropriate to presume that defense counsel has explained the nature of the offense in sufficient detail to give the accused notice of what he is being

asked to admit." (Citations omitted; internal quotation marks omitted.) *State* v. *Hackett*, 16 Conn. App. 601, 603, 548 A.2d 16 (1988).

"In deciding whether it is appropriate to presume that defense counsel has adequately explained the charge in question to the defendant, we must examine the circumstances of the case to determine if those circumstances warrant the invocation of the presumption. . . . Thus, we must look to whether the record indicates that such an explanation has been given." (Citation omitted.) *State* v. *Alicea*, 41 Conn. App. 47, 56–57, 674 A.2d 468 (1996).

We acknowledge that the trial court in this case did not recite the specific portion of § 53a-54a pertaining to intent. Nonetheless, on the basis of our review of the record and the transcripts, we conclude that the defendant was informed sufficiently of the element of intent. First, the information expressly contained the intent element. See *Oppel* v. *Lopes*, 200 Conn. 553, 558, 512 A.2d 888 (1986) (finding it significant that indictment specifically contained element omitted from trial court's explanation of charged offense). Furthermore, during the canvass, the defendant stated that defense counsel had explained § 53a-54a to him. The court specifically asked, "Did you discuss with your attorney what this crime consists of? In other words, if your case went to trial, what the state would have to do to prove—what evidence that the state would have to introduce to prove that you were guilty of this offense? Did you talk that over with him?" The defendant responded, "Yes, sir." See *Bowers* v. *Warden*, 19 Conn. App. 440, 443, 562 A.2d 588 (trial court may rely on defendant's responses during plea canvass in deciding he was informed adequately of elements of charged offenses), cert. denied, 212 Conn. 817, 565 A.2d 534 (1989). The court also explained to the defendant that if the case proceeded to trial, the state would have to

"bring in their evidence and prove that you're guilty beyond a reasonable doubt." Later during the canvass, the court stated, "Now, the charge of murder is—is very simple. The—under our statute, murder is the intentional killing of a human being, in other words, causing the death of someone and doing that intentionally." Finally, the court summed up the state's case, stating, "[Y]ou confronted Mr. Goss, that you—according to [the state's attorney]—the—as I deduce from his evidence, and intentionally fired a shot into his chest, causing his death." See *State* v. *Pinette*, 52 Conn. App. 59, 64, 724 A.2d 1139 (1999) (recitation of facts by prosecutor provided defendant with " 'real notice' " of crime charged).

The foregoing indicates that the defendant had been adequately apprised of the intent element in § 53a-54a.[9] We therefore reject the defendant's claim that he did not understand fully the true nature of the charge against him.

### D

The defendant next claims that the court failed to conduct sufficient inquiry to determine if his plea was voluntary. Specifically, he contends that the court improperly accepted only one word answers from him when inquiring into the voluntariness of his plea and that the court failed to conduct a sufficient inquiry to determine whether he was mentally competent to enter a plea. He argues that the record indicated that he was only nineteen years old, had a "questionable mental status" and was coerced into pleading guilty, but that

---

[9] Although a defendant's claim of ineffective assistance of counsel "is a factor to be taken into consideration in determining whether a guilty plea was voluntary and intelligent"; *Dukes* v. *Warden*, 161 Conn. 337, 344, 288 A.2d 58 (1971), aff'd, 406 U.S. 250, 92 S. Ct. 1551, 32 L. Ed. 2d 45 (1972); *State* v. *Childree*, 189 Conn. 114, 124, 454 A.2d 1274 (1983); we note our conclusion in part II, affirming the habeas court's finding that trial counsel did not render ineffective assistance.

the court improperly failed to inquire as to his competence. We disagree. Because those claims address whether the court conducted a sufficient colloquy to determine the voluntariness of his plea, we address them together.

We first reject the defendant's claim that his one word responses indicate that his plea was involuntarily or unknowingly made. "Although some form of meaningful dialogue is preferable to monosyllabic responses by the defendant, we have never held that single-word responses require an automatic vacation of a guilty plea." *State* v. *Torres*, 182 Conn. 176, 179–80, 438 A.2d 46 (1980). In this case, a fair reading of the record discloses that the defendant had a full understanding of what the plea connotes and of its consequence, and it demonstrates that he entered it intelligently, knowingly and voluntarily such that it withstands a constitutional attack on the basis of facial invalidity. See id., 183.

With respect to the defendant's claim that an evidentiary hearing was necessary to gauge his competence, we note that General Statutes § 54-56d (a) provides in relevant part: "A defendant shall not be tried, convicted or sentenced while he is not competent. . . ." Subsection (c) further provides that "[i]f at any time during a criminal proceeding it appears that the defendant is not competent, counsel for the defendant or for the state, or the court, on its own motion, may request an examination to determine the defendant's competency." Thus, in appropriate circumstances, a trial court must, sua sponte, make a further inquiry into a defendant's competence to ensure that he is competent to plead guilty. *State* v. *Johnson*, supra, 253 Conn. 21; *State* v. *Watson*, 198 Conn. 598, 605, 504 A.2d 497 (1986). "The decision to grant [an evidentiary] hearing [into a defendant's competence] requires the exercise of sound judicial discretion." (Internal quotation marks omitted.) *State* v. *Wolff*, 237 Conn. 633, 664, 678 A.2d 1369 (1996). Thus,

we review under the abuse of discretion standard the court's failure to order sua sponte an inquiry into the defendant's competence. Id., 664–65.

"A defendant who challenges the validity of his guilty plea for lack of an evidentiary inquiry into his competence must make a showing that, at the time of his plea, the court had before it specific factual allegations that, if true, would constitute substantial evidence of mental impairment. . . . Substantial evidence is a term of art. Evidence encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is substantial if it raises a reasonable doubt about the defendant's competency . . . .

"[I]n considering whether to hold an evidentiary hearing on a motion to withdraw a guilty plea the court may disregard any allegations of fact, whether contained in the motion or made in an offer of proof, which are either conclusory, vague or oblique. For the purpose of determining whether to hold an evidentiary hearing, the court should ordinarily assume any specific allegations of fact to be true. If such allegations furnish a basis for withdrawal of the plea under [Practice Book § 39-27], and are not conclusively refuted by the record of the plea proceedings, and other information contained in the court file, then an evidentiary hearing is required." (Citations omitted; internal quotation marks omitted.) *State* v. *Blue*, 230 Conn. 109, 124–25, 644 A.2d 859 (1994).

Connecticut appellate courts have repeatedly held that a trial court may not be required to order a competency examination when the defendant's canvass supports a finding of competency. See *State* v. *Johnson*, supra, 253 Conn. 28; *State* v. *Wolff*, supra, 237 Conn.

665–66; *State* v. *Watson,* supra, 198 Conn. 606–607; *State* v. *Janice,* 20 Conn. App. 212, 214, 565 A.2d 553, cert. denied, 213 Conn. 811, 568 A.2d 795 (1989). In this case, the defendant responded appropriately to the court's questioning throughout the canvass. Neither his responses nor his behavior during the plea canvass indicated an inappropriate affect. See *State* v. *Watson,* supra, 606. Rather, as we have stated, the record reveals coherent, appropriate responses to the court's questions. Furthermore, defense counsel never requested a competency hearing nor did he file a notice of defense that would have put the defendant's mental state in issue. Id.

In support of his claim that the court had substantial evidence before it to order a hearing, the defendant points to a presentence investigation report that noted that he suffered "mental problems since his father's death," smoked marijuana, drank alcohol and suggested that he may be suicidal. That information was not, however, before the court on the day of the plea canvass. As such, "the trial court was entitled to rely on its own observations of the defendant's responses during the canvassing, in light of his demeanor, tone, attitude and other expressive characteristics. . . . The trial court was in the best position to assess whether the defendant behaved rationally at that time." (Citations omitted.) *State* v. *DesLaurier,* 230 Conn. 572, 590, 646 A.2d 108 (1994).

Insofar as the defendant claims that the court should have conducted a further inquiry into his competency at the sentencing hearing, we conclude that it was reasonable for the trial court to conclude that no competency hearing was required because the evidence before the court did not raise a reasonable doubt concerning the defendant's ability to understand the proceedings. See id., 585.

While we acknowledge that a defendant who is competent at a plea proceeding may later become incompetent at sentencing; see *State* v. *Wolff*, supra, 237 Conn. 666 (defendant who is competent at commencement of trial may later become incompetent such that court must order competency evaluation); we are not persuaded that the court abused its discretion in failing to order a competency evaluation at sentencing. Implicit in the court's acceptance of the defendant's plea is a finding of competency. See *State* v. *Johnson*, supra, 253 Conn. 31. In this case, the court had accepted the defendant's plea only a little more than one month before sentencing. In addition, vague statements in the defendant's presentence report do not support the conclusion that he did not understand the proceedings against him.[10] If anything, they indicate that the defendant comprehended the gravity of his situation and provided the court with the tools to determine whether custodial care and treatment were more appropriate for him than incarceration. See *State* v. *Wolff*, supra, 668.

The defendant's claim that he was coerced into entering a plea and that the court failed to inquire sufficiently into his voluntariness similarly must fail. The defendant

[10] The presentence investigation report indicates that the defendant was traumatized when he was age thirteen by his father's sudden death shortly following his parents' separation. The defendant blamed his mother for his father's death, did not respect authority figures, dropped out of school, lived on his own, smoked marijuana and drank alcohol. He had, "at best, a limited employment history." The report further reveals the following statement by the defendant: "I feel like killing myself for what happened. I didn't want to do the time for something I did not do. When my father tells me it's time to go, I will go. I'm sick of suffering for something I shouldn't be in here for."

Our review of the report also indicates, however, that the defendant was in good health, resourceful and clearly understood his predicament. He admitted becoming a member of a street gang because he "wanted and needed . . . money and a warm bed." He admitted that he made a good living selling drugs, primarily marijuana and crack cocaine, such that he could support other individuals on the street and fund his vacations to Jamaica. He further stated that he needed and kept a gun to protect himself from gangs in New London.

failed to proffer any evidence to the trial court that he was coerced. The only evidence before the court that even remotely suggests coercion was defense counsel's statement that he had discussed the consequences of the plea at length with the defendant and the defendant's mother, and that the defendant and his mother had several discussions, particularly in the forty-eight hours before entering his plea. The court had no reason to assume that the defendant's discussions with his counsel and his mother were anything other than appropriate. We decline to take the defendant's view that this raised a reasonable doubt as to his competence.

It is well established that "[a] trial court 'may properly rely on . . . the responses of the [defendant] at the time [she] responded to the trial court's plea canvass . . . .' Bowers v. Warden, [supra, 19 Conn. App. 443]; see also State v. Williams, 203 Conn. 159, 170, 523 A.2d 1284 (1987)." State v. Casado, 42 Conn. App. 371, 377, 680 A.2d 981 (trial court properly relied on defendant's representations that she was not forced into entering plea), cert. denied, 239 Conn. 920, 682 A.2d 1006 (1996). In this case, the court informed the defendant that it would not accept his plea unless it was voluntary.[11] It then repeatedly asked the defendant pointed questions regarding the voluntariness of his plea, including whether he was coerced in any way to enter his plea.[12]

[11] As the plea canvass commenced, the court informed the defendant: "Before I accept your plea, I have to ask you some questions. . . . [T]he reason I'm doing this is that I want to make absolutely certain that your plea is voluntary. And by that I mean that you know exactly what's going to happen, that you are making this decision to enter this plea voluntarily with proper—with all of your proper constitutional rights protected, and that you're doing this knowing exactly what's going to happen, and that you're doing it for the proper purposes."

[12] The following colloquy occurred:

"The Court: And would it be fair to say that you're [entering a plea] voluntarily after discussing it with your attorney, is that correct?

"The Defendant: Yes, sir.

"The Court: Okay. Did anyone make any—any promises to you that are not part of the record, any other promises, anything we haven't heard about

The court properly relied on the defendant's representations that he was not coerced into entering a plea, and the court was not required to conduct a hearing to determine whether the defendant was coerced.

We conclude that the canvass was entirely consistent with an implicit finding of competency at the time that the plea was entered and accepted by the court, and that the defendant's plea of guilty was voluntarily and knowingly given. Our review, therefore, reveals that the defendant cannot establish that a constitutional violation clearly exists and clearly deprived him of a fair trial. The defendant cannot satisfy the third prong of *Golding* and cannot prevail on his claims. The judgment of the trial court on the defendant's direct appeal is affirmed.

## II

We now turn to the defendant's[13] habeas appeal. The defendant appeals from the judgment of the habeas court dismissing counts one and two of his amended petition for a writ of habeas corpus.[14] On November 24, 1999, the habeas court granted the defendant's petition

here this morning?

"The Defendant: No, sir. No, sir.

"The Court: Anyone make any threats that if you didn't plead guilty certain things would happen to you?

"The Defendant: No, sir.

"The Court: Okay. So, again, you're doing it voluntarily after discussing it with your attorney, is that correct?

"The Defendant: Yes, sir."

[13] Although we typically refer to the appellant in habeas appeals as the petitioner and to the state in such appeals as the respondent, to be consistent with part I, we continue to refer to the appellant as the defendant and to the state as the state.

[14] The defendant's amended petition for a writ of habeas corpus consisted of six counts. Counts three and four, which dealt with whether his pretrial incarceration time had been calculated and applied correctly to his sentence, were withdrawn without prejudice at the commencement of the habeas hearing. Counts five and six alleged deprivation of the right to appeal and the failure to inform the defendant of his right to apply for sentence review.

for certification to appeal. On appeal, the defendant claims that the habeas court improperly concluded that he failed to establish by a preponderance of the evidence that (1) alleged defects in his guilty plea rendered the plea involuntary, and (2) his trial counsel rendered ineffective assistance and that it was reasonably probable that, but for counsel's ineffective assistance, the result would have been different. We affirm the judgment of the habeas court.

## A

The defendant first claims that the habeas court improperly concluded that he did not sustain his burden of proving that the trial court's plea canvass was defective, thereby rendering the defendant's plea involuntarily and unknowingly made.

The defendant's arguments reiterate those arguments posited in his direct appeal. On the basis of our reasoning and conclusion in part I, we conclude that the habeas court properly concluded that the trial court's plea canvass did not render the defendant's plea involuntarily or unknowingly made.

## B

The defendant claims that the habeas court improperly concluded that his defense counsel rendered effective assistance that was not prejudicial to the defendant. The defendant claims that the assistance was ineffective because counsel (1) did not investigate the circumstances underlying the crime or assert the affirmative defenses of intoxication, extreme emotional disturbance, self-defense or third party culpability, (2) failed to investigate the defendant's competency to plead or to seek a continuance so that he could so investigate, and failed to seek an evidentiary hearing to determine the defendant's competency to plead, (3) "fostered coercion regarding the defendant's plea," (4) improp-

erly advised the defendant of the elements of the crime charged and the punishment for the crime, and (5) failed to advise the defendant of his right to appeal or to apply for sentence review, thereby prejudicing him.

"At the outset, we note that, in considering a habeas corpus appeal, [t]he underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. So-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations, are not facts in this sense. . . . Whether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Walton* v. *Commissioner of Correction*, 57 Conn. App. 511, 514–15, 749 A.2d 666, cert. denied, 254 Conn. 913, 759 A.2d 509 (2000).

"A criminal defendant is entitled, under the sixth and fourteenth amendments to the United States constitution and by article first, § 8, of the constitution of Connecticut, to effective assistance of counsel. . . . A criminal defendant is not constitutionally entitled to error free representation. . . . A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense. . . . Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Citations omitted; internal quotation marks omitted.) *Cosby* v. *Commissioner of Correction*, 57 Conn. App. 258, 259–60, 748

A.2d 352 (2000), citing *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). When claims of ineffective assistance of counsel arise from the plea negotiation process, "to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Daniel* v. *Commissioner of Correction*, 57 Conn. App. 651, 665, 751 A.2d 398, cert. denied, 254 Conn. 918, 759 A.2d 1024 (2000).

"Paramount to the effective assistance of counsel is the obligation by the attorney to investigate all surrounding circumstances of the case and to explore all avenues that may potentially lead to facts relevant to the defense of the case. . . However, counsel need not track down each and every lead or personally investigate every evidentiary possibility before choosing a defense and developing it. . . .

"In considering an ineffective assistance of counsel claim, every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . . Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Citations omitted; internal quotation marks omitted.) *Walton* v. *Commissioner of Correction*, supra, 57 Conn. App. 521–22.

"In the context of a guilty plea, our Supreme Court has stated: [T]he petitioner must show that such a decision to plead not guilty would have been based on the

likelihood that the introduction of the evidence for the defense that was not identified because of ineffective assistance of counsel would have been successful at trial. . . . [The United States Supreme Court stated that in] many guilty plea cases, the prejudice inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate . . . the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." (Internal quotation marks omitted.) *Henry* v. *Commissioner of Correction*, 60 Conn. App. 313, 318, 759 A.2d 118 (2000); see also *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 156–57, 662 A.2d 718 (1995).

1

The defendant claims that the habeas court improperly concluded that his defense counsel provided effective assistance. The defendant claims that defense counsel's assistance was ineffective because he failed to investigate the circumstances of the crime charged and, consequently, failed to assert the affirmative defenses of intoxication, self-defense, extreme emotional disturbance and third party culpability. We disagree.

With respect to the defendant's intoxication claim, the only evidence presented to the habeas court was defense counsel's testimony that he did not question the defendant about whether he was intoxicated at the time of the crime. In support of the defendant's claim that his counsel failed to investigate the facts underlying the defense of extreme emotional disturbance, the defendant offered the following evidence. The defendant and the victim were close, childhood friends. The defendant learned, however, that the victim was having an affair with his girlfriend, and he went to the victim's home to confront him. The defendant argues that this love triangle, coupled with his mental instability at the time of the crime, should have caused defense counsel to investigate whether the defense of extreme emotional distress was an appropriate defense. Regarding self-defense, the defendant argued that a knife found near the scene of the crime should have led defense counsel to investigate whether the victim had provoked the defendant. He further testified that he told his counsel that the victim pulled a knife on him and that someone from behind him shot the victim. Finally, the defendant argues that defense counsel failed to adequately investigate whether a third party committed the crime even though counsel was made aware that the "talk on the street" was that another party committed the killing, and the defendant told counsel the name of the person he claimed had killed the victim.

As we have stated, the *Strickland* test requires the defendant to show that counsel's performance was deficient and that it was prejudicial. *Strickland* v. *Washington*, supra, 466 U.S. 687. In cases in which the defendant claims that counsel's performance was deficient because he failed to pursue an affirmative defense, "the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." (Internal quotation marks omitted.)

*Henry* v. *Commissioner of Correction,* supra, 60 Conn. App. 318. "A reviewing court can find against the petitioner on whichever ground is easier." (Internal quotation marks omitted.) *Walton* v. *Commissioner of Correction,* supra, 57 Conn. App. 518.

Our review of the transcript indicates that the court properly found that the defendant failed to offer any evidence that an investigation into the feasibility of the defense of intoxication would have revealed information likely to change the outcome at a trial so as to lead counsel to change his plea recommendation or otherwise lead the defendant to change his plea.

The court properly concluded that defense counsel reasonably believed that a defense of extreme emotional distress was not an option in light of the defendant's persistent claim of innocence, and that, therefore, counsel did not render deficient performance. See *Henry* v. *Commissioner of Correction,* supra, 60 Conn. App. 319 (habeas court properly found no ineffective assistance where counsel failed to investigate petitioner's mental status in light of persistent claim of innocence). Our review also indicates that the defendant did not satisfy the prejudice prong of *Strickland.* He offered no evidence as to his emotional state at the time of the killing that would support such a defense. He merely testified that he was "stressed out" and had family problems since he was about thirteen years old. He therefore failed to show that the defense would have succeeded at trial. See id. (counsel's alleged failure to investigate defense of mental defect did not constitute ineffective assistance as defendant's insistence that she did not shoot victim relieved attorney of obligation to investigate defense).

We also agree with the court's conclusion that it was reasonable for the defense counsel to not pursue the defense of self-defense in light of the defendant's ada-

mant insistence that he did not shoot the victim. Furthermore, the record indicates that the defendant offered no evidence to show that a claim of self-defense would have been successful at trial. Rather, the evidence strongly indicated that he was the initial aggressor, having gone to the victim's home with a loaded weapon and seeking a confrontation. The defendant did not present evidence that he had withdrawn from the encounter or communicated his intent to do so, thereby justifying his action. General Statutes § 53a-19 (b). He also did not show that he had no duty to retreat. Id. Consequently, the defendant has not shown deficient performance or that he was prejudiced by counsel's rejection of that possible defense.

We further conclude that the defendant's claim that his counsel failed to investigate third party culpability is without merit because the defendant failed to show deficient performance. The defense counsel testified that he investigated whether a third party killed the victim and was ready to proceed to trial on that theory. The court found that the evidence, including the credible testimony of counsel, supported the conclusion that there was a "significant investigative effort" by counsel. It is not for this court to evaluate the credibility of the witnesses. *Rivera* v. *Commissioner of Correction*, 57 Conn. App. 390, 395, 748 A.2d 368, cert. denied, 253 Conn. 921, 755 A.2d 215 (2000).

In sum, a review of the record supports the habeas court's finding that counsel properly investigated the feasibility of those possible defenses. The defendant consistently claimed innocence and failed to show that counsel had any reason to believe that the defenses were appropriate; therefore, the failure to investigate the facts underlying the defenses of intoxication, extreme emotional disturbance and self-defense would not constitute deficient performance. See *Henry* v. *Commissioner of Correction*, supra, 60 Conn. App. 319

(failure to investigate defendant's mental status not ineffective assistance in light of defendant's persistent claim of innocence). The record also indicates that the defendant failed to offer any evidence that an investigation into those affirmative defenses would have revealed information that would have changed the likely outcome of a trial so as to lead counsel to change his plea recommendation or otherwise lead the defendant to change his plea. Likewise, the defendant failed to show that counsel's investigation of the defendant's assertion that someone else committed the crime was deficient.

In light of the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance"; *Strickland* v. *Washington*, supra, 466 U.S. 689; see *Johnson* v. *Commissioner of Correction*, 222 Conn. 87, 98, 608 A.2d 667 (1992); and the defendant's failure to offer any evidence supporting his argument that he was prejudiced by counsel's alleged failures to investigate and to assert those defenses, we conclude that the habeas court properly found that defense counsel's assistance was not ineffective.

2

The defendant next claims that the habeas court improperly concluded that trial counsel did not render ineffective assistance because counsel (a) did not investigate the defendant's competency, (b) failed to seek a continuance before trial to provide counsel with time to investigate the defendant's competency and (c) did not seek a competency hearing for the defendant.

With respect to the defendant's claim that counsel failed to investigate his competency, we first note that in the habeas court, the defendant's claim of ineffective assistance in this regard was limited to counsel's alleged failure to become aware of the defendant's mental state at the time that he entered his plea. The court did not,

however, address that part of the defendant's ineffective assistance of counsel claim, and the defendant did not file a motion for articulation requesting the habeas court to address that claim. As a result, there is no record before us of the habeas court's reasoning on that issue. In accordance with Practice Book § 66-5, the defendant has a duty to provide this court with a record for review. "[T]he [defendant's failure to comply with that section renders the record inadequate and] the [defendant's] claim must fail." *Rouillard* v. *Commissioner of Correction*, 35 Conn. App. 754, 758, 646 A.2d 948, cert. denied, 231 Conn. 945, 653 A.2d 827 (1994).

Our review of the record further indicates that the defendant did not raise as an issue in the habeas court counsel's alleged failure to seek a continuance or competency hearing. "It is axiomatic that a party cannot submit a case to the trial court on one theory and then seek a reversal in the reviewing court on another. A party is not entitled to raise issues on appeal that have not been raised in the trial court. [B]ecause our review is limited to matters in the record, we will not address issues not decided by the trial court." (Internal quotation marks omitted.) *In re James L.*, 55 Conn. App. 336, 348–49, 738 A.2d 749, cert. denied, 252 Conn. 907, 743 A.2d 618 (1999). We decline, therefore, to review those claims.

3

The defendant also claims that the habeas court improperly concluded that he received effective assistance of counsel and that he was not coerced into entering his plea. Specifically, the defendant argues that he was coerced into entering his plea when he was improperly advised by counsel, or by counsel through the defendant's mother, that he could get the death penalty or that he could be paroled in about fifteen years. We disagree.

"This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . In a case that is tried to the court . . . the judge is the sole arbiter of the credibility of witnesses, and the weight to be given to their specific testimony." (Citations omitted; internal quotation marks omitted.) *Rivera* v. *Commissioner of Correction*, supra, 57 Conn. App. 395.

The habeas court found that the defendant's testimony with respect to those claims lacked credibility. It did find, however, that defense counsel's testimony that he advised the defendant that he could serve a minimum of twenty five years and a maximum of sixty years was credible. The record is devoid of any evidence that the defendant was coerced.

We conclude that the habeas court properly found that the defendant was not coerced and therefore did not receive ineffective assistance of counsel.

4

The defendant's final claim is that the habeas court improperly concluded that he did not receive ineffective assistance of counsel even though it concluded that defense counsel's failure to advise the defendant of his right to appeal and his right to apply for sentence review constituted deficient performance, and was per se prejudicial. We disagree with the defendant's interpretation of the court's conclusion.

The defendant's petition for a writ of habeas corpus alleged ineffective assistance of counsel due to counsel's failure to advise him of his right to appeal from the judgment of conviction after his guilty plea and his right to apply for sentence review. The court concluded that counsel was required to inform the defendant of

those rights and that counsel's failure to do so prejudiced him by depriving him of his right to appeal. Consequently, the court restored the defendant's rights to appeal and to apply for sentence review. Nevertheless, the court stated, "However, neither the failure to advise the [defendant] of his appellate rights nor the failure to advise the [defendant] of his right to request sentence review require the court to vacate the prisoner's sentence. Neither failure, taken singly or in combination, resulted in such a significant deficit in the petitioner's comprehension of the consequences of his guilty plea as to invalidate it. . . . The court is not persuaded that, but for the failures to advise the [defendant] of his appellate rights and his right to apply for sentence review, he would have elected to go to trial rather than plead guilty." (Citation omitted.)

The defendant, in his brief on appeal, correctly points out that the court found that the failure to advise him of his appellate rights constituted prejudice per se. He argues that "[t]hat, in itself should have been sufficient to find trial counsel provided ineffective assistance prejudicial to the petitioner. However, again, the court did not conduct a sufficient analysis. The court failed to analyze how the failure to advise related to the claim of ineffective assistance."

Although the habeas court appears to have made contradictory statements regarding whether the defendant was prejudiced, our reading of the court's memorandum of decision is that the court ultimately concluded that restoration of the defendant's appellate rights and right to sentence review was appropriate and that it in fact restored those rights. See *James L. v. Commissioner of Correction*, 245 Conn. 132, 148, 712 A.2d 947 (1998) ("habeas court must fashion a remedy appropriate to the constitutional right it seeks to vindicate"); *State v. Phidd*, 42 Conn. App. 17, 28–29, 681 A.2d 310, cert. denied, 238 Conn. 907, 679 A.2d 2 (1996),

cert. denied, 520 U.S. 1108, 117 S. Ct. 1115, 137 L. Ed. 2d 315 (1997). We therefore reject the defendant's claim.

The judgments are affirmed.

In this opinion the other judges concurred.