STATE OF CONNECTICUT *v.* PAUL R. DUCHARME
(AC 33216)

Gruendel, Robinson and Borden, Js.

Argued January 11—officially released April 3, 2012

*Jeremiah Donovan*, for the appellant (defendant).

*Peter A. McShane*, supervisory assistant state's attorney, with whom were *Daniel E. Cummings*, certified legal intern, and, on the brief, *Michael L. Regan*, state's attorney, and *Kyle Zrenda*, certified legal intern, for the appellee (state).

*Opinion*

BORDEN, J. The defendant, Paul R. Ducharme, appeals from the judgment of the trial court denying his motion to withdraw his guilty plea. On appeal, he claims that his plea was involuntarily and was taken without substantial compliance with the provisions of Practice Book § 39-19.[1] We affirm the judgment of the trial court.

On December 12, 2000, the defendant appeared before the court for the purpose of entering a guilty plea in one of four files then pending against him. The defendant at that time pleaded guilty to the crime of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), under the *Alford* doctrine,[2] and to the crime of employing a minor in an obscene performance in violation of General Statutes § 53a-196a (a) (1). Thus, while entering that portion of the guilty plea under the *Alford* doctrine, he did not admit that

---

[1] Practice Book § 39-19 provides in relevant part: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands: (1) The nature of the charge to which the plea is offered; (2) The mandatory minimum sentence, if any; (3) The fact that the statute for the particular offense does not permit the sentence to be suspended; (4) The maximum possible sentence on the charge . . . and (5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made . . . ."

[2] See *North Carolina* v. *Alford*, 400 U.S. 25, 37–39, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

he had committed the crime of sexual assault to which he pleaded guilty. Thereafter, the court canvassed the defendant and, upon completion, inquired of counsel if anything further was necessary and if there were any reasons as to why the plea should not be accepted. Defense counsel was satisfied with the plea canvass and did not offer any reason why the plea should not be accepted.

On January 29, 2001, the defendant filed a written motion to vacate the guilty plea entered on December 12, 2000, on the explicit basis that he may have been incompetent to enter his plea on that date. In response, the court ordered a competency hearing and appointed special counsel to represent the defendant. At the hearing, Kenneth Selig, a psychiatrist requested by the defense to examine the defendant, testified that the defendant had not been competent to enter a plea. In response, the state called Molly Driscoll, a clinical social worker for the Connecticut department of mental health and addiction services who performs competency to stand trial evaluations. She testified that the defendant was examined by a team of medical professionals to determine the issue of competency. She stated that the defendant had told the team that he had "just withdrawn his plea because he felt he wasn't competent" even though the defendant admitted that the only confusion he had during the December 12, 2000 court appearance was with the trial court's questions on deportation. Despite the defendant's claim, the team concluded that he was competent to stand trial. At the end of the hearing, the court concluded that the defendant was competent at the time of his December 12, 2000 plea and, therefore, denied the defendant's motion to vacate. This appeal followed. Additional facts will be set forth as necessary.

The defendant frames the issue on appeal as whether his plea was involuntary and in violation of Practice

Book § 39-19. It is clear, however, that the defendant has conflated the inquiry regarding a "knowing and voluntary" plea with the issue of his competency, despite these being two separate issues. The purpose of the "knowing and voluntary" inquiry is to determine whether the defendant actually understands "the significance and consequences of a particular decision and whether the decision is uncoerced." (Internal quotation marks omitted.) *State* v. *Connor*, 292 Conn. 483, 512, 973 A.2d 627 (2009). The focus of a competency inquiry, by contrast, is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings. Id. Therefore, despite the defendant entangling these two issues in his argument, we will consider each one independently.

I

COMPETENCY

It is clear that at the hearing on the motion to withdraw the plea, the only issue before the trial court was whether the defendant had been competent to enter his guilty plea.[3] Therefore, we begin our analysis by considering the issue of competency.

---

[3] The following colloquy occurred during the hearing on the defendant's motion to withdraw the plea:

"[Assistant State's Attorney]: Your Honor, if I could at this time just to be task specific, exactly today I thought we were on an issue of motion for competency. And I'm not aware of any, if there is at this time, of a motion pending for a motion to withdraw a plea. Although, I understand it may be taken into a bigger context later on. But, if my argument astrays, I apologize but I'm going to—

"The Court: It's the court's understanding—

"[Assistant State's Attorney]: —Yes, Your Honor—

"The Court: —and I want to make sure, [defense counsel], that we are all on the same page. That the only issue before the court today is whether or not [the defendant] was competent at the time he pleaded on December 12, 2000. That's the only issue.

"[Defense Counsel]: That was the substance of my argument, Your Honor.

"The Court: All right, thank you."

We review the court's determination of competency under an abuse of discretion standard. See *State* v. *DesLaurier*, 230 Conn. 572, 586, 646 A.2d 108 (1994). "[A] defendant is not competent if the defendant is unable to understand the proceedings against him or her or to assist in his or her own defense." General Statutes § 54-56d (a). "In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *State* v. *Hernandez*, 254 Conn. 659, 665–66, 759 A.2d 79 (2000). "Essentially, we examine the relevant record to determine whether the trial court reasonably could have concluded that the defendant was competent to plead guilty. In doing so, we give deference to the trial court's findings of fact because the trial court has the benefit of firsthand review of the defendant's demeanor and responses during the canvass." *State* v. *Johnson*, 253 Conn. 1, 27 n.26, 751 A.2d 298 (2000).

The defendant claims that at the time he entered his guilty plea he was suffering from an emotional and intellectual meltdown. The defendant argues that his answers to the court's inquiry into his competency as part of the plea canvass were "robotic" and did not demonstrate cognitive thought exceeding that of an "automaton." He contends that the record illustrates that he would have responded affirmatively regardless of what the trial court asked, even if the court had informed him that he would face a death sentence. The state contends that the defendant's responses to the court's plea canvass, his attorney's explicit and implied representations that he was competent and the court's

own observations all support the conclusion that the defendant was competent to plead guilty. We agree with the state.

The record reflects that the defendant affirmed to the court that he understood that he was pleading guilty and by doing so he was waiving specific rights. The defendant was subjected to an extensive plea canvass by the court. His answers to that canvass demonstrated that he understood the proceedings and was capable of assisting in his defense. Throughout the entire colloquy between the court and the defendant, the court repeatedly asked the defendant if he understood what the court was saying and in each instance the defendant affirmed that he did. The defendant also had the awareness to show deference to the court as he regularly finished his responses with "Your Honor." The court also noted that the defendant had participated extensively in the preparation of his case with his attorney, a statement which neither the defendant nor his attorney contested. Furthermore, during the exchange the defendant had with the court he properly distinguished between questions calling for "yes" or "no" answers and even alerted the court when he had trouble hearing certain questions. Although some form of a meaningful dialogue is preferred, our Supreme Court has held that single word responses do not invalidate a plea. See *State* v. *Torres*, 182 Conn. 176, 179–80, 438 A.2d 46 (1980). Finally, the plea canvass indicates that the defendant understood the difference between entering a plea of guilty under the *Alford* doctrine and a straight guilty plea.[4]

---

[4] The following exchange occurred during the defendant's plea canvass:

"The Court: You pled guilty under the *Alford* doctrine to sexual assault in the second degree, the allegations were the same, a minor who was [fifteen] at the time, you engaged in sexual intercourse. I [am] assuming that you pled guilty under the *Alford* doctrine because you don't necessarily agree with what the prosecutor just told me as to that situation, but you do believe the state may well have enough evidence to convict you if this case went to trial and you want to avoid a harsher sentence, is that true, sir?

"[The Defendant]: Yes, Your Honor."

The defendant argues nevertheless that Selig's testimony established that he was not competent to plead.[5] A review of the record, however, reveals there was significant support for the trial court's decision to discredit Selig's testimony. Selig did not evaluate the defendant until January 22, 2001, which was approximately forty-one days after he pleaded guilty. Selig's conclusion also was in sharp contrast with that of the trial judge who canvassed the defendant on December 12, 2000. "The trial judge is in a particularly advantageous position to observe a defendant's conduct during a trial and has a unique opportunity to assess a defendant's competency. A trial court's opinion, therefore, of the competency of a defendant is highly significant." *State v. Murray*, 28 Conn. App. 548, 553–54, 611 A.2d 916 (1992), appeal dismissed, 225 Conn. 524, 624 A.2d 377 (1993). In this case, the court was in a prime position to observe the defendant as it noted at the beginning of the ruling that the court had been "intimately involved" with the case since the defendant's original appearance before the court in April, 1999. In fact, part of the reason the court stated that it did not credit Selig's conclusion was that it conflicted so considerably with what the court had personally observed.

Furthermore, Selig's investigation into the circumstances surrounding the plea was minimal. He interviewed only two witnesses, the defendant's friend, Krista Duncan, and his defense counsel, Bruce McIntyre. Only McIntyre was present at the time the defendant pleaded, and he informed Selig that he believed the defendant to be competent. McIntyre also had been in the presence of the defendant throughout all of the proceedings.

---

[5] At oral argument before this court, defense counsel claimed that Selig was evaluating the defendant not for the purpose of determining whether he was competent but instead to determine whether he knowingly and voluntarily entered his plea. Such a claim is without merit and in contradiction to the facts of the record.

Moreover, Selig's final conclusion is legally inconsistent, namely, that the defendant was competent to stand trial throughout the entirety of the case, yet, somehow not competent to plead guilty on December 12, 2000. The distinction that one can be competent to stand trial but not competent to plead guilty was considered and rejected by the United States Supreme Court in *Godinez* v. *Moran*, 509 U.S. 389, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993). The competency standard for pleading guilty or waiving the right to counsel is the same as the competency standard for standing trial: "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" Id., 396. There is no reason for the competency standard for either of those decisions to be higher than that for standing trial. "[T]he decision to plead guilty [though profound] is no more complicated than the sum total of decisions that a defendant may be called upon to make during the course of a trial." Id., 398.

Finally, Selig concluded that the defendant's past psychiatric history of anxiety and depression created a propensity for the defendant to decompensate under stress. That conclusion, however, does not control the inquiry faced by the court when trying to determine whether the defendant is competent. "[C]ompetence to stand trial . . . is not defined in terms of mental illness. . . . An accused may be suffering from a mental illness and nonetheless be able to understand the charges against him and to assist in his own defense . . . . Therefore, the test for determining competence focuses not solely on a historical assessment of mental illness but on whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has

a rational as well as factual understanding of the proceedings against him." (Citations omitted; internal quotation marks omitted.) *State* v. *Mordasky*, 84 Conn. App. 436, 446, 853 A.2d 626 (2004). Thus, in order to support a claim of incompetence, the defendant needed to establish that he could neither comprehend the proceedings nor assist in his defense. A review of the record demonstrates that the court was justified in determining that the defendant understood the proceedings and had the ability to assist in his defense, notwithstanding any history of emotional illness.

## II

## KNOWING AND VOLUNTARY

The defendant also claims that his plea was involuntary and that the court did not substantially comply with the provisions of Practice Book § 39-19. The defendant claims that the court failed to comply with the requirements of Practice Book § 39-19 because the court's canvass did not specifically address the defendant's rights (1) to persist in his not guilty plea, (2) to the assistance of counsel and (3) to confront the witnesses against him. We reject this claim.

Despite the defendant's contentions to the contrary, he did not raise this issue before the trial court. See footnote 3 of this opinion. Accordingly, the defendant seeks to prevail on this unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless

error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40. "The first two prongs of *Golding* address the reviewability of the claim, and the last two involve the merits of the claim." *State* v. *Brown*, 56 Conn. App. 26, 31, 741 A.2d 321 (1999), cert. denied, 252 Conn. 927, 746 A.2d 790 (2000).

The state concedes that the defendant has met the first two *Golding* requirements in that the record is adequate to permit review and the defendant's claim is of constitutional magnitude. Nevertheless, the defendant's claim must fail because no constitutional violations exist.

To the extent that the defendant's claim implicates the failure of the trial court to apprise him of the constitutionally mandated requirements for a valid plea, as delineated in *Boykin* v. *Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), his claim is properly reviewable. Under *Boykin*, a defendant must be cognizant prior to entering a guilty plea of the following three constitutional rights: "(1) the privilege against compulsory self-incrimination; (2) the right to trial by jury; and (3) the right to confront one's own accusers." *State* v. *Carter*, 243 Conn. 392, 397, 703 A.2d 763 (1997). While the federal constitution requires that the record of the plea canvass indicate the voluntariness of any waiver of the three core constitutional rights delineated in *Boykin*, it does not require that the trial court go beyond these " 'constitutional minima'." *State* v. *Lugo*, 61 Conn. App. 855, 862, 767 A.2d 1250, cert. denied, 255 Conn. 955, 772 A.2d 153 (2001); see also *State* v. *Badgett*, 200 Conn. 412, 418, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). "A defendant can voluntarily and understandingly waive these rights without literal compliance with the prophylactic safeguards of Practice Book [§§ 39-19 and 39-20]. Therefore . . . precise compliance with the provisions [of the

Practice Book] is not constitutionally required." (Internal quotation marks omitted.) *State* v. *Williams*, 60 Conn. App. 575, 580, 760 A.2d 948, cert. denied, 255 Conn. 922, 763 A.2d 1043 (2000). Accordingly, this court's analysis focuses on whether the federal constitutional principles were satisfied rather than on scrupulous compliance with the provisions of the rules of practice.

The defendant in this case does not claim that the trial court neglected to advise him concerning the right against compulsory self-incrimination or the right to a trial by jury, as the record expressly indicates that those conditions were satisfied.[6] The defendant's only constitutional claim is that the court did not inform him of his right to confront the witnesses against him.[7]

The record in this case indicates that the defendant's constitutionally protected rights have not been infringed. The defendant argues that the court's statement that the defendant had the "right to question any witnesses the state might bring in here to testify against you," was insufficient to advise the defendant of his

[6] The following colloquy occurred during the defendant's plea canvass:

"The Court: All right. Now, as to both of those pleas, you have given up the right to have your case tried by a judge or a jury. You have given up your right to remain silent, not to incriminate yourself. You have given up your right to question any witnesses the state might bring in here to testify against you. You have given up your right to call your own witnesses to testify for you. You have given up your right to put on any kind of a defense. You have given up your right if you chose to defend yourself, but most importantly . . . as to both of these charges you have given up your right to make the state prove the case beyond a reasonable doubt at the time of trial. Do you understand, sir, that you have given up each and every one of those rights?

"[The Defendant]: Yes, Your Honor."

[7] The defendant's other two claims, namely, that the court's canvass did not specifically address the defendant's rights to persist in his not guilty plea and the right to the assistance of counsel, are not part of the constitutional minima required by *Boykin*, but instead are additional safeguards of the rules of practice. Thus, to the extent that the defendant seeks to prevail on appeal on these nonconstitutional claims, we decline to consider them.

right to confront and cross-examine these witnesses. We disagree. It is reasonable to conclude that the phrase "to question" sufficiently conveys the meaning of the word "confront" in this context. See *State* v. *Suggs*, 194 Conn. 223, 228, 478 A.2d 1008 (1984) ("[t]he trial court did not err in advising the defendant that he had the right to 'face' his accusers rather than 'confront' his accusers"). Indeed, a defendant unsophisticated in the law might be better informed of the right to confront witnesses by the use of the more commonly understood term, "question." The court did not commit an impropriety in advising the defendant that he was giving up the right to "question" rather than "confront" his accusers.

The judgment is affirmed.

In this opinion the other judges concurred.