******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# TERRY D. JOHNSON *v.* COMMISSIONER OF CORRECTION
## (AC 45797)

Elgo, Clark and Lavine, Js.

*Syllabus*

The petitioner appealed, on the granting of certification, from the habeas court's denial of his petition for a writ of habeas corpus. The petitioner claimed, inter alia, that the court improperly concluded that his criminal trial counsel were not ineffective by advising him to plead guilty to various charges arising out of the shooting death of a state trooper, including capital felony murder. *Held*:

The habeas court properly concluded that the petitioner failed to sustain his burden with respect to both demonstrating deficient performance by his trial counsel and establishing prejudice as a result of his trial counsel's advice to plead guilty in an attempt to present a mitigating factor to prevent the imposition of the death penalty and, thus, that his counsel did not provide ineffective assistance.

The habeas court properly concluded that the petitioner failed to establish that his trial counsel provided deficient performance with respect to their failure to raise a diminished capacity defense prior to his guilty plea, and, therefore, that claim alleging ineffective assistance of counsel failed.

The habeas court properly concluded that the petitioner failed to establish prejudice with respect to his claim that his trial counsel were ineffective in not raising the issue of his competency to elect a three judge panel for the guilt phase of his criminal trial, and, thus, that claim of ineffective assistance of counsel failed.

The habeas court properly concluded that the petitioner failed to establish prejudice with respect to his claim that his trial counsel were ineffective in failing to object to his guilty plea on the ground of competency and, accordingly, that claim of ineffective assistance of counsel failed.

The habeas court properly concluded that the petitioner's trial counsel did not provide ineffective assistance by incorrectly advising him that the trial court would not accept his guilty plea after the issue of his competency had been raised at the same proceeding, as the factual predicate for that claim did not exist, and the petitioner failed to sustain his burden of demonstrating prejudice by establishing that he would not have pleaded guilty had he been advised as he claimed he should have been.

Argued January 9—officially released December 17, 2024

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *M. Murphy, J.*, rendered judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Nicole Britt*, assigned counsel, with whom, on the brief, was *Christopher Y. Duby*, assigned counsel, for the appellant (petitioner).

*Lena A. Arnold* and *Brandi A. Roberts*, certified legal interns, with whom was *Ronald G. Weller*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

LAVINE, J. The petitioner, Terry D. Johnson, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, he claims that the court improperly concluded that his criminal trial counsel were not ineffective in (1) advising him to plead guilty, (2) failing to raise a diminished capacity defense, (3) failing to raise the issue of his competency at two different proceedings, and (4) advising him that the court would not accept his guilty plea after the issue of his competency had been raised at that same proceeding. We disagree and, accordingly, affirm the judgment of the habeas court.

The following facts and procedural history are relevant to this appeal. On December 10, 1992, the petitioner pleaded guilty to murder and felony murder in violation of General Statutes (Rev. to 1991) §§ 53a-54a and 53a-54c, capital felony murder of a member of the division of state police, while the officer was acting within the scope of his or her duties, in violation of General Statutes (Rev. to 1991) §§ 53a-54b (1), 53a-54a (a) and (c) and 53a-54c, and burglary in the first degree in violation

of General Statutes (Rev. to 1991) § 53a-101 (a) (1) and (2). These charges arose from the shooting death of Connecticut State Trooper Russell Bagshaw during the commission of a burglary of a sporting goods store.

At the time of his guilty plea, the petitioner admitted the following facts before a three judge panel,[1] *Corrigan*, *Spada* and *Potter, Js.*: "During the early morning hours of June 5, 1991, the [petitioner] and his brother, Duane Johnson, broke into the Land and Sea Sports Center (Land and Sea) in North Windham. The [petitioner] entered the building through a small window and removed several weapons and boxes of ammunition from the Land and Sea by passing them through the window to Duane. The [petitioner] loaded a semiautomatic nine millimeter pistol and passed that weapon through the window to Duane as well. During the course of the break-in, Bagshaw, who was on routine patrol in the vicinity, drove his cruiser into the parking lot of the Land and Sea. Duane saw Bagshaw's cruiser approaching and warned the [petitioner]. The [petitioner] exited the Land and Sea through the window by which he had entered. The [petitioner], armed with the semiautomatic nine millimeter pistol, then proceeded to wait near the building. As Bagshaw's cruiser approached the Land and Sea, the [petitioner] began shooting at the cruiser. One of the bullets fired by the [petitioner] hit Bagshaw, fatally wounding him. The [petitioner] and Duane then fled the scene." *State* v. *Johnson*, 253 Conn. 1, 6, 751 A.2d 298 (2000).

Following his arrest, Attorneys Patrick Culligan and Ramon Canning were appointed to represent the petitioner. On October 22, 1992, the petitioner appeared at

[1] General Statutes (Rev. to 1981) § 54-82 (b) provides: "If the accused is charged with a crime punishable by death or imprisonment for life and elects to be tried by the court, the court shall be composed of three judges consisting of the judge presiding at the session and two other judges to be designated by the chief justice. Such judges, or a majority of them, shall have power to decide all questions of law and fact arising upon the trial and render judgment accordingly."

a hearing before Judge Corrigan regarding his motion to change his election of a jury trial to a three judge panel. When canvassed by Judge Corrigan, the petitioner initially denied consuming any alcohol or drugs within the past twenty-four hours. The petitioner then stated that, approximately twelve hours before the hearing, he had taken "sleeping pills, body tranquilizers" but commented that he felt "pretty good." He indicated that he had no difficulty hearing the court, and, in response to the court's inquiry as to whether he understood the proceeding, the petitioner responded: "Yes, pretty much to—as much as it makes sense." At the conclusion of the court's canvass, Judge Corrigan stated that, "[i]n view of the motion and remarks of the [petitioner] concerning the motion, his knowledge and *apparent competency* and capacity to understand the questioning . . . the court grants the [petitioner's] motion [for a three judge panel]." (Emphasis added.)

The three judge panel subsequently held a hearing on December 10, 1992. At the outset, the petitioner's counsel moved for a competency hearing pursuant to General Statutes (Rev. to 1991) § 54-56d. The basis for this motion was a December 9, 1992 letter sent to Culligan from David M. Mantell, a clinical psychologist who had examined the petitioner. In that letter, Mantell raised a concern regarding the petitioner's competency.[2] Judge Corrigan responded that he had found

---

[2] The December 9, 1992 letter from Mantell stated: "I have examined [the petitioner] since November 25 exploring child and family development issues for the purpose of mitigation in the event of his conviction.

"During my first examination of [the petitioner] on 11/25/92 but particularly during those this morning and this afternoon, I have found symptomatic evidence of psychotic thought process *which, if validated, may severely impact on* [the petitioner's] *present legal competence.*

"After reviewing my results with you and Attorney Canning today I learned that this information is new and not previously known. It was not part of the background data or findings given to me before or since I began my study.

"The conclusion expressed above was promptly relayed telephonically to you and to Attorney Canning from the Hartford Correctional Center this afternoon." (Emphasis added.)

the petitioner competent on October 22, 1992, and that Mantell's letter did not change that determination. Judge Corrigan further stated that the burden of proof for this issue rested with the petitioner. Counsel offered to have Mantell appear in court and testify, to which Judge Corrigan responded: "Well, if he's going to testify by virtue of what's in the letter it would not be sufficient." Judge Corrigan then denied the petitioner's motion for a competency examination.

The petitioner then directly addressed the three judge panel (trial court), stating: "In order to save the family additional suffering I hereby plead guilty and accept responsibility for the crimes I have committed." Specifically, the petitioner pleaded guilty to murder and felony murder, capital felony murder, and burglary as alleged in counts one, two, and three of the amended information dated December 9, 1992. The prosecutor then presented a detailed recitation of the facts underlying the criminal charges. After a recess, the trial court conducted a thorough and comprehensive canvass of the petitioner with respect to his guilty plea.[3] It found that the petitioner's plea was "made knowingly, intelligently, and voluntarily, with full understanding of the crimes charged—their possible penalties—and the consequences of such a plea—and after adequate advice and assistance of counsel. The [trial] court finds there exists a factual basis to support acceptance of these pleas, and the pleas of guilty are accepted and may be recorded and a finding of guilt is made."

"After the [petitioner's] guilty plea, a separate sentencing hearing was conducted pursuant to General

---

[3] During a colloquy with the trial court, the petitioner stated that he was at the Land and Sea Sports Center in the early morning hours of June 5, 1991, where he committed a burglary, and he recognized the arrival of a police cruiser and a police officer. He further stated: "I shot at a police cruiser and caused the death of a police officer." He also admitted that it was his intention to shoot at the cruiser and cause the death of the officer inside.

Statutes (Rev. to 1991) § 53a-46a . . . . At the conclu-
sion of the sentencing phase of the trial, the jury found
an aggravating factor and no mitigating factor. In accor-
dance with the jury's findings, the trial court rendered
a judgment of guilty of capital felony and imposed the
death penalty on the [petitioner]."[4] (Footnote omitted.)
*State* v. *Johnson*, supra, 253 Conn. 6–8.

The petitioner appealed to our Supreme Court, and
he raised twenty-eight issues. Id., 9. The court reversed
the judgment imposing the death penalty on the basis
of insufficient evidence of an aggravating factor and
remanded the case with direction to impose a life sen-
tence without the possibility of release. Id. As a result
of this conclusion, the court considered only four of
the petitioner's remaining claims. Id., 9–10. Specifically,
the petitioner argued that the trial court improperly
had denied his motions for a competency examination,
made on December 10, 1992, and on March 3, 4 and 9,
1993, in violation of his state and federal constitutional
rights. Id., 11–19. Our Supreme Court concluded that,
although the trial court had applied an improper eviden-
tiary standard to the petitioner's requests for a compe-
tency evaluation, this error did not deprive him of his
rights to due process. Id., 12–13. He also claimed that
the trial court improperly (1) accepted his guilty pleas
because they were not knowing, intelligent, or volun-
tary, and there was not substantial compliance with our
rules of practice; id., 31–32; (2) denied his motion to

---

[4] Our Supreme Court explained that, "[u]nder [the then existing] capital
offense sentencing scheme, a capital defendant may not be sentenced to
death unless the state establishes the existence of an aggravating factor
beyond a reasonable doubt, and the defendant fails to establish a mitigating
factor by a preponderance of the evidence. . . . In the present case, the
jury rejected the aggravating factor of 'especially depraved,' but did find as
an aggravating factor that the [petitioner] had committed the offense of
capital felony in an 'especially cruel and heinous manner.' . . . The jury's
verdict also indicated that it had found no mitigating factor." (Citations
omitted.) *State* v. *Johnson*, supra, 253 Conn. 56.

withdraw his guilty plea without holding an evidentiary hearing or appointing new counsel; id., 47; and (3) deprived him of a fair determination of probable cause. Id., 78. Our Supreme Court rejected all of the petitioner's arguments with respect to these claims.

The petitioner subsequently commenced the present habeas action. In an amended petition dated June 18, 2020, the petitioner alleged ineffective assistance of counsel. Specifically, the petitioner claimed that Canning and Culligan were ineffective in failing (1) to advise him not to plead guilty, (2) to reasonably investigate, plead, and/or raise diminished capacity as a defense at the guilt phase, and (3) to preserve the issue of competency based on the petitioner's statements at the October 22 and December 10, 1992 canvasses. Additionally, the petitioner claimed that Canning provided ineffective assistance of counsel by advising him that the trial court would stop the proceedings and not accept his guilty plea after the issue of competency had been raised at the December 10, 1992 proceeding.

The habeas court held a one day trial on November 10, 2021. The petitioner submitted a number of documents that were admitted into evidence, namely, transcripts, psychological evaluations and reports, and a copy of the criminal case file. The petitioner, Canning, and Attorney Walter Bansley III testified. The parties submitted posttrial briefs.

On July 25, 2022, the court issued a memorandum of decision denying the petition for a writ of habeas corpus. At the outset, the court explained that it addressed the allegations of deficient performance made against only Canning as if they were made against both Canning and Culligan and that, to the extent that any claim mentioned in the amended petition was not addressed in the posttrial briefs, it was deemed abandoned. After setting forth the relevant legal principles, the court then

considered the petitioner's claim that "counsel failed to advise him that he should not plead guilty when he would not be spared the death penalty and would be accepting no less than life without the possibility of parole. Stated somewhat differently and as briefed by the petitioner, the petitioner faults counsel for [failing to advise him not to] plead guilty because there was no practical benefit gained from pleading guilty. Subsumed within this claim is the prospect that the petitioner would have accomplished a better outcome in the guilt phase by going to trial instead of pleading guilty." The court concluded that it was a reasonable and sound strategy to recommend that the petitioner plead guilty because it could be considered a mitigating factor pursuant to General Statutes (Rev. to 1991) § 53a-46a (d) during the sentencing phase of the trial. Thus, the court determined that counsel were not deficient in their performance. Additionally, the court concluded that the petitioner had failed to demonstrate prejudice "because he has not shown that the outcome of the guilt phase would have been any different or better. The petitioner has not substantiated any defenses that, had they been raised, would have resulted in any convictions or less punishment than what resulted of the guilty pleas. The court also does not credit the petitioner's testimony, which was inconsistent and highly selective, that he would not have pleaded guilty." Finally, the habeas court pointed out that the reversal of the death penalty and imposition of life imprisonment without the possibility of release as a result of his appeal to our Supreme Court further supported the absence of prejudice.

The court then considered the petitioner's claim that counsel were ineffective in failing to investigate, plead, and/or raise a diminished capacity defense. It determined that the petitioner had failed to present any evidence to substantiate the claim that a viable diminished capacity defense existed that would have resulted in a

conviction for a lesser included offense or an acquittal. Accordingly, the court concluded that he failed to establish that his counsel's performance was deficient or that he was prejudiced as a result.

Next, the court addressed the petitioner's claim that counsel were ineffective in failing to object to the canvass conducted by Judge Corrigan at the October 22, 1992 proceeding in which the petitioner requested to be tried before a three judge panel at the guilt phase. The petitioner claimed that, on the basis of his responses during that canvass, counsel should have objected and raised the issue of lack of competency. The court disagreed that the petitioner's responses during this canvass supported the contention that he was not competent and concluded: "The petitioner has not shown that counsel were deficient for failing to object to the October 22 canvass, which only has a tangential connection to the actual guilty pleas, nor that he was prejudiced."

The court then turned to the petitioner's claim that his counsel were ineffective in failing to object or raise a claim that he was incompetent to plead guilty after Judge Corrigan denied his motion for a competency evaluation with respect to the issue of his competency to stand trial at the outset of the December 10, 1992 proceeding. In rejecting this claim, the court stated: "Counsel represented a client in a capital case with egregious facts and no viable mental health defense. None of the experts who evaluated the petitioner were able to conclude that he was not competent. Attorney Canning acknowledged that the [December 10, 1992] last-minute request for a competency evaluation was intended to delay the proceedings.[5] Consequently, the court concludes that the petitioner has failed to present any evidence that counsel were ineffective for failing

[5] This is an unusually frank and troubling admission.

to object to the December 10, 1992 canvass." (Footnote added.)

Finally, the court addressed the petitioner's claim that his counsel were ineffective in advising him that the court would refuse to accept his guilty plea after the issue of his competence had been raised at the same proceeding. He also claimed that he had not wanted to plead guilty. The court determined that "[t]he credible evidence belies the petitioner's contentions." It further explained that the petitioner had failed to demonstrate deficient performance or prejudice with respect to this claim.

In conclusion, the court stated: "The evidence in the habeas case, submitted nearly thirty years after the underlying criminal proceedings, shows that the defense quickly retained a defense expert who extensively and thoroughly evaluated the petitioner in preparation for potential defenses and mitigating evidence. The credible evidence supports the conclusion that the petitioner was competent, did not have a viable defense to assert in the guilt phase, that the state had overwhelming evidence against the petitioner, and that guilty verdicts on all charged counts were all but assured. The defense strategy of the petitioner pleading guilty and then proceeding to the penalty phase, which now could encompass the mitigant that the petitioner had taken full responsibility for his crimes and not made the victim's family go through both phases of the trial, was reasonable and sound. A trial in the guilt phase would have removed an important mitigant from the scale that the petitioner was attempting to tilt in his favor.

"The court concludes that the petitioner has not proven that counsel failed to object to any of the court canvasses and were deficient in their performance when he pleaded guilty. Additionally, the petitioner has

failed to prove that he was prejudiced because he has not shown that the outcome of the guilt phase would have been any different or better. The petitioner has not substantiated any defenses that, had they been raised, would have resulted in any convictions or less punishment than what resulted . . . .

"Lastly, the Supreme Court's decision to vacate the sentence of death, which resulted in a sentence of life without the possibility of release, further supports the conclusion that the petitioner was not prejudiced by pleading guilty. Had the state agreed not to seek the death penalty in exchange for the petitioner's guilty plea, then his convictions and sentences would be precisely what he has today. Therefore, the court concludes that counsel were not ineffective as to the petitioner's guilty plea." The court denied the petition for a writ of habeas corpus, and subsequently granted his petition for certification to appeal. This appeal followed.

Before addressing the petitioner's specific appellate claims, we set forth the relevant legal principles and our standard of review. The sixth amendment to the United States constitution guarantees a criminal defendant the right to the effective assistance of counsel for his defense. See, e.g., *Coltherst* v. *Commissioner of Correction*, 208 Conn. App. 470, 477, 264 A.3d 1080 (2021), cert. denied, 340 Conn. 920, 267 A.3d 857 (2022). "To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. . . . To satisfy the performance prong, the petitioner must establish that his counsel made errors so serious that [counsel] was not functioning as the counsel guaranteed the [petitioner] by the [s]ixth [a]mendment. . . . The petitioner must thus show that counsel's representation

fell below an objective standard of reasonableness considering all of the circumstances. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . Furthermore, the right to counsel is not the right to perfect counsel. . . .

"To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . In its analysis, a reviewing court may look to the performance prong or to the prejudice prong, and the petitioner's failure to prove either is fatal to a habeas petition. . . .

"On appeal, [a]lthough the underlying historical facts found by the habeas court may not be disturbed unless they [are] clearly erroneous, whether those facts constituted a violation of the petitioner's rights [to the effective assistance of counsel] under the sixth amendment is a mixed determination of law and fact that requires the application of legal principles to the historical facts of [the] case. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Citations omitted; internal quotation marks omitted.) *Soyini* v. *Commissioner of Correction*, 222 Conn. App. 428, 441–42, 305 A.3d 662 (2023), cert. denied, 348 Conn. 940, 307 A.3d 274 (2024). Guided by these principles, we turn to the specific claims raised by the petitioner in this appeal.

I

The petitioner first claims that the court improperly concluded that counsel were not ineffective by advising

him to plead guilty. Specifically, he argues that counsel were ineffective by advising him to plead guilty without receiving any benefit or consideration for doing so and he suffered prejudice as a result thereof. We conclude that the petitioner failed to establish prejudice with respect to this claim.

The following additional facts are necessary for the resolution of this issue. At the habeas trial, the petitioner testified that he pleaded guilty on the advice of Canning and Culligan. He further stated that he would not have pleaded guilty if his counsel had informed him that (1) he could be sentenced to life imprisonment as a result of pleading guilty, (2) the court could accept his guilty plea even though a competency evaluation had been requested, and (3) even if he was found incompetent, that would not permanently stop the proceedings.

Bansley testified as a legal expert on behalf of the petitioner and stated that he had represented several individuals facing capital murder charges. He then stated that criminal defendants generally plead guilty to receive some form of consideration. He acknowledged that, in a capital case where the evidence against a defendant is overwhelming, the best result may be to plead guilty in exchange for a life sentence. Bansley also indicated that he would not recommend that a defendant plead guilty unless he or she received some form of consideration for doing so. He further described the approach of "frontloading" the mitigation evidence as having an opportunity to present it twice, first during the guilt phase and second during the penalty phase. Bansley explained that this strategy afforded counsel the opportunity to present the facts of the case to a jury over an extended period time, which would "humanize" the petitioner, particularly with the use of psychological evidence, to show "all the difficulties he had growing up" such as the petitioner's long-standing

mental illness, being abandoned by his mother several times, and the physical abuse he suffered from this father. Bansley expressly opined that, in general, an attorney should not advise his or her client to plead guilty if there is no benefit and, in particular, should not advise a defendant to plead guilty when the death penalty remained a potential sentence.

Canning testified that he was employed as a public defender for thirty-nine years and he had worked on two or three capital cases before being appointed, along with Culligan, to represent the petitioner. He stated that the petitioner pleaded guilty based on the advice he received from counsel. Canning could not recall why the petitioner was advised to plead guilty, and he "could not imagine what the strategy was . . . ." Later, he noted that, given the fact that the state was continuing to pursue the death penalty, there was no risk of going to trial at the guilt phase and he could not identify a benefit to pleading guilty.

During cross-examination, Canning acknowledged that, because the state would not reduce the charges or agree not to pursue the death penalty, he needed "to mitigate the damage for [his] client . . . ." He admitted that a guilty plea may be used to elicit "sympathy" for use during the penalty phase. Finally, Canning acknowledged that Culligan worked in the capital felony unit of the public defender's office and worked on these types of cases "consistently."

In his posttrial brief submitted to the habeas court, the petitioner argued that his counsel were ineffective in failing to advise him not to plead guilty because he did not receive anything in exchange for such a plea, as he still faced the possibility of the death penalty. He iterated that the better approach was to go to trial "because it would allow the defense to frontload the mitigation evidence and put some distance between

when you're selecting your jury and starting the case to when you get to the penalty phase." (Internal quotation marks omitted.) The respondent, the Commissioner of Correction, countered, inter alia, that the petitioner's criminal counsel "reasonably focused on the penalty phase of the trial."

In its memorandum of decision, the court noted that the state adamantly insisted on pursuing the death penalty, and, given the strength of its case and the weakness of the petitioner's defenses, the guilt phase was "a poor testbed for any defense theories." Rather, the petitioner's counsel focused on the penalty phase. It further determined that the record indicated that the petitioner and his counsel used the guilty plea as a mitigating factor. The court explained that the strategy of pleading guilty, and then using the fact that the petitioner took responsibility for his actions and did not force the victim's family to go through both phases of the criminal trial, was reasonable and sound. Had the jury found that the petitioner's decision to plead guilty constituted a mitigating factor, the court could not have imposed a sentence of death. General Statutes (Rev. to 1991) § 53a-46a (g). The court also disagreed with Bansley regarding the benefit of presenting psychological evidence twice to the fact finder. Specifically, the court stated: "Two bites at the apple, in this court's assessment, would not have benefited the petitioner given the totality of the circumstances of this case. Furthermore, a trial in the guilt phase would have removed an important mitigant from the aggravant versus mitigant scale that the petitioner was attempting to tilt in his favor." Accordingly, the court determined that the petitioner had failed to demonstrate deficient performance.

Additionally, the habeas court concluded that the petitioner failed to establish prejudice as a result of his counsel's advice to plead guilty. The habeas court expressly discredited the petitioner's testimony, which

it described as inconsistent and highly selective, that he would not have pleaded guilty. Further, it stated that the petitioner failed to demonstrate that the outcome of the guilt phase would have been any different, as he did not substantiate any defenses that, had they been raised, would have resulted in a better result for him following the opinion of our Supreme Court.

On appeal, the petitioner reasserts his claim that counsel improperly failed to advise him against pleading guilty when the state continued to pursue the death penalty. He further contends that, because there was evidence that he was not remorseful following the shooting of the victim, and the victim's family had to "suffer through" the penalty phase of the trial, pleading guilty in this case did not amount to a mitigating factor.[6] Finally, the petitioner argues that he was prejudiced because, by pleading guilty, he "gave up his only opportunity to present a defense that could have led to a conviction of a lesser offense" on the basis of a diminished capacity defense. We are not persuaded by the petitioner's arguments.

The prejudice prong of the *Strickland* test has been modified in cases where the petitioner claims improper advice from counsel with respect to the decision to plead guilty. In such cases, the petitioner satisfies his burden with respect to prejudice by reasonably demonstrating that, but for the conduct of counsel, he would not have pleaded guilty. See *Williams* v. *Commissioner of Correction*, 223 Conn. App. 745, 753, 310 A.3d 381, cert. denied, 349 Conn. 901, 312 A.3d 586 (2024); see generally *Hill* v. *Lockhart*, 474 U.S. 52, 58–59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). "However, a petitioner must make more than a bare allegation that he would have pleaded differently to demonstrate prejudice . . .

---

[6] The fact that the state presented evidence during the penalty phase that the petitioner was neither remorseful nor accepting of responsibility for his actions did not render counsel's strategy deficient. See footnote 7 of this opinion.

because such a statement suffers from obvious credibility problems and must be evaluated in light of the circumstances the defendant would have faced at the time of his decision." (Internal quotation marks omitted.) *Williams* v. *Commissioner of Correction*, supra, 753; see also *Love* v. *Commissioner of Correction*, 223 Conn. App. 658, 667, 308 A.3d 1040, cert. denied, 348 Conn. 958, 310 A.3d 960 (2024).

"In evaluating the credibility of such an assertion [that the petitioner would not have pleaded guilty], the strength of the state's case is often the best evidence of whether a defendant in fact would have changed his plea and insisted on going to trial, in light of newly discovered evidence or a defense strategy that was not previously contemplated. . . . Likewise, the credibility of the petitioner's after the fact insistence that he would have gone to trial should be assessed in light of the likely risks that pursuing that course would have entailed." (Internal quotation marks omitted.) *Colon* v. *Commissioner of Correction*, 179 Conn. App. 30, 36–37, 177 A.3d 1162 (2017), cert. denied, 328 Conn. 907, 178 A.3d 390 (2018).

The habeas court discredited the petitioner's testimony and concluded that he failed to present any other evidence that he would not have pleaded guilty but for the improper advice provided by counsel.[7] Specifically,

---

[7] To prevail on a claim of ineffective assistance of counsel, the petitioner must prevail on both prongs of the *Strickland-Hill* test, and a court may decide against a petitioner on either prong, whichever is easier. See *Williams* v. *Commissioner of Correction*, supra, 223 Conn. App. 752–53. In the present case, the habeas court concluded that the petitioner's counsel were not deficient in their strategy to plead guilty and focus on the penalty phase due to the strength of the state's case and the comparative weakness of the petitioner's defenses and that the petitioner was not prejudiced. Contrary to the petitioner's assertion that there was "no conceivable benefit to pleading guilty," counsel sought to use the guilty plea as a mitigation factor. General Statutes (Rev. to 1991) § 53a-46a (c) placed the burden of establishing a mitigating factor on the petitioner, *while subsections (f) and (g) provided that if a mitigating factor existed, then the court shall not impose the sentence of death.*

it stated: "The court also does not credit the petitioner's

The habeas court referred to Canning's closing argument during the penalty phase, in which he attempted to persuade the three judge panel that the petitioner's guilty plea constituted a "responsible act" and thus a mitigating factor. As noted in the respondent's appellate brief, courts have acknowledged the reasonableness of such a strategy. See, e.g., *Post* v. *Bradshaw*, 621 F.3d 406, 417–18 (6th Cir. 2010) (advice to plead no contest was not deficient performance when state's case was so strong that conviction was essentially assured and sentencing court would not hear adverse testimony and petitioner gained mitigating factor), cert. denied, 563 U.S. 1009, 131 S. Ct. 2902, 179 L. Ed. 2d 1249 (2011); *Hodges* v. *Bell*, 548 F. Supp. 2d 485, 518 (M.D. Tenn. 2008) (petitioner's trial counsel, who were experienced in capital cases and clearly aware of state's overwhelming evidence and hampered by petitioner's public statements and interviews admitting to several murders, made reasonable strategic decision to recommend guilty plea to demonstrate remorse and limit proof that state could introduce), aff'd sub nom. *Hodges* v. *Colson*, 727 F.3d 517 (6th Cir. 2013), cert. denied sub nom. *Hodges* v. *Carpenter*, 575 U.S. 915, 135 S. Ct. 1545, 191 L. Ed. 2d 642 (2015); *Brant* v. *State*, 197 So. 3d 1051, 1065 (Fla. 2016) (counsel's expertise and experience in trying capital murder cases rendered them qualified to advise defendant that guilty plea would limit jury's exposure to damaging nature of his confession and it might help avoid ire of jury if he attempted to contest guilt, and therefore advice to plead guilty was reasonable); *Simonsen* v. *Premo*, 267 Or. App. 649, 661–67, 341 P.3d 817 (2014) (acknowledging guilt can constitute tenable capital defense strategy, especially where evidence is overwhelming and crime heinous, and may be tactically advantageous choice within *Strickland*), cert. denied, 357 Or. 324, 354 P.3d 696 (2015).

The United States Supreme Court has stated that "[c]ounsel therefore may reasonably decide to focus on the trial's penalty phase, at which time counsel's mission is to persuade the trier that his client's life should be spared. Unable to negotiate a guilty plea in exchange for a life sentence, defense counsel must strive at the guilt phase to avoid a counterproductive course. . . . In this light, counsel cannot be deemed ineffective for attempting to impress the jury with his candor and his unwillingness to engage in a useless charade. . . . *To summarize, in a capital case, counsel must consider in conjunction both the guilt and penalty phases in determining how best to proceed.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Florida* v. *Nixon*, 543 U.S. 175, 191–92, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004).

In the present case, the petitioner's counsel made the informed strategic decision to plead guilty in the face of overwhelming evidence and to focus on establishing a mitigating factor to avoid the death penalty. We conclude that this approach did not constitute constitutionally deficient performance and, therefore, this claim of ineffective assistance of counsel must fail. The petitioner, therefore, has not sustained his burden with respect to either prong of the *Strickland-Hill* test on this claim.

testimony, which was inconsistent and highly selective, that he would not have pleaded guilty. For example, the petitioner could not recall his guilty plea and mental health treatment around the time of his plea but could completely recall other aspects of his pretrial process." It is not the function of this court to second-guess the credibility determination of the habeas court with respect to this critical finding regarding the petitioner's decision to plead guilty. See *Smith* v. *Commissioner of Correction*, 215 Conn. App. 167, 187–89, 282 A.3d 1036, cert. denied, 345 Conn. 921, 284 A.3d 983 (2022). We iterate that the petitioner must reasonably demonstrate that, but for the conduct of counsel, he would not have pleaded guilty. See *James P.* v. *Commissioner of Correction*, 224 Conn. App. 636, 645–46, 312 A.3d 1132 (to establish prejudice, petitioner need only establish it is reasonably probable that, but for counsel's deficient performance, he or she would not have accepted plea offer and insisted on going to trial), cert. denied, 349 Conn. 911, 314 A.3d 603 (2024). Additionally, beyond the petitioner's testimony that he would not have pleaded guilty, which the habeas court rejected, the petitioner did not present any evidence relative to the prejudice prong of the *Strickland-Hill* test. Further, the state had a strong case against the petitioner. In the absence of any other evidence to support the claim that the petitioner would not have pleaded guilty, we conclude that, under these facts and circumstances, he failed to demonstrate prejudice. See *Williams* v. *Commissioner of Correction*, supra, 223 Conn. App. 756.

## II

The petitioner next claims that the court improperly concluded that his counsel were ineffective in failing to raise a diminished capacity defense. Specifically, he argues that counsel were deficient in failing to investigate adequately this defense, which would have negated the intent requirement in a capital murder case, prior

to his guilty plea or to pursue such a defense during the guilt phase. The respondent counters, inter alia, that the petitioner failed to demonstrate that counsel did not investigate adequately a diminished capacity defense, and, therefore, their performance was not deficient. We agree.

The following additional facts are necessary for the resolution of this claim. On June 9, 1991, days after the shooting, the petitioner's counsel hired Kenneth Selig, a psychiatrist, to conduct an "extensive examination" to assist the defense. Selig concluded that the petitioner was competent but had suffered from serious psychological illnesses for most of his life. Additionally, Mantell, in his December 9, 1992 letter, stated that he had examined the petitioner "for the purpose of mitigation in the event of his conviction" and found evidence that, if validated, might have called into question the petitioner's competence. The petitioner pleaded guilty the next day, after Judge Corrigan denied his motion for a competency evaluation.

Following his guilty plea, the petitioner was examined by various psychologists and other mental health providers. Mantell authored a psychological report dated April 17, 1993, in which he concluded: "From 1985 through 1992/93, [the petitioner] has experienced a significant loss of cognitive capacity. His profile is also consistent with the insidious onset of a major, mental disorder. Because of his significant history of head trauma, however, subtle brain damage cannot be ruled out. . . . *While his major loss of mental capacity to think, to make judgments, and to control his impulses, has not rendered him incompetent, this loss has, in my professional opinion, significantly impaired his ability to conform his conduct to the requirements of law.*" (Emphasis added.)

In his amended petition for a writ of habeas corpus, the petitioner alleged that his counsel was ineffective

in failing to reasonably investigate, plead, and/or raise a diminished capacity defense on the basis of Mantell's evaluations, which had occurred after he pleaded guilty. The petitioner argued that there was evidence that he had suffered severe abuse and neglect, had a family history of mental illness and antisocial behavior, had sustained head injuries, and had experienced a significant loss of cognitive capacity that impacted his ability to conform his conduct to the requirements of law.

During the habeas trial, Canning acknowledged that Mantell worked with the petitioner prior to his guilty plea. Further, during cross-examination, Canning stated that he instructed medical professionals to evaluate his clients for various types of mental states, including diminished capacity.[8] Canning further acknowledged that the medical professionals were not able to provide

---

[8] Specifically, the following colloquy occurred:

"[The Respondent's Counsel]: And fair to say that when you do that in death penalty cases or any case, your instructions to the medical professional are pretty much, evaluate this guy for [extreme emotional disturbance], diminished capacity, insanity; give me something I can work with. Correct?

"Canning: Yes.

"[The Respondent's Counsel]: Okay. And that would have been the same especially in this case. Wouldn't it have been?

"Canning: Yes.

"[The Respondent's Counsel]: And at some point after those evaluations, you notified the court that you had no intent to file a mental status defense on behalf of your client. Right?

"Canning: I don't recall that, but I would certainly say that we did not file it.

"[The Respondent's Counsel]: That you did not file for a mental disease or defect alibi or— excuse me—defense. Correct?

"Canning: Correct.

"[The Respondent's Counsel]: And that would have been that because, in part, your doctors were not able to provide you with such a defense, were they?

"Canning: That's true.

"[The Respondent's Counsel]: So, at that point, your only option is to take what your doctors have given you concerning the mental state of your client and attempt to use it at the penalty phase?

"Canning: Well, that's one possibility."

an opinion that such a defense was available in the present case.

In rejecting the petitioner's claim regarding diminished capacity, the court summarized the timeline of events in the present matter. Specifically, it noted that the underlying offenses were committed on June 5, 1991, and that counsel hired Selig on June 9, 1991. Selig conducted an "extensive examination" of the petitioner to assist in his defense. The petitioner pleaded guilty on December 10, 1992, one day after Mantell had written a letter expressing a concern regarding the petitioner's competency. The court further observed that Bansley, the petitioner's expert, had acknowledged that the professionals who evaluated the petitioner had indicated that any impairment from which he suffered was not sufficient to the degree necessary to be a defense to the crime of murder.

The court concluded that the petitioner had "not presented any evidence in the habeas trial that substantiates he had a viable diminished capacity defense that would have resulted in a conviction for a lesser included offense or an acquittal. *To the contrary . . . the defense left no proverbial stone unturned.* Unfortunately, the petitioner was competent and did not have a supportable defense. The court concludes that the petitioner has proven neither that counsel were ineffective for failing to investigate, plead, and/or raise a diminished capacity defense, nor that he was prejudiced." (Emphasis added.)

On appeal, the petitioner asserts that, contrary to the conclusions of the court, he presented evidence demonstrating that he had a viable diminished capacity defense. "Specifically, the evidence shows that the petitioner suffered severe abuse and neglect, family history of mental illness and antisocial behavior, had several head injuries, and had a significant loss of cognitive

capacity that had significantly impaired his ability to conform his conduct to the requirements of law." (Internal quotation marks omitted.) The petitioner acknowledges that his counsel had utilized mental health experts prior to his guilty plea but claims much of the evidence regarding a diminished capacity defense was not developed and analyzed until after his guilty plea. "As a result, the petitioner was deprived of the information he needed to properly pursue a diminished capacity defense during the guilt phase."

"In order for a petitioner to prevail on a claim of ineffective assistance on the basis of deficient performance, he must show that, considering all of the circumstances, counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. . . . In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. . . .

"[J]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight,

to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . Indeed, our Supreme Court has recognized that [t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. . . . [A] reviewing court is required not simply to give [the trial attorney] the benefit of the doubt . . . but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as [he] did . . . ." (Emphasis omitted; internal quotation marks omitted.) *Morales* v. *Commission of Correction*, 220 Conn. App. 285, 305–306, 298 A.3d 636, cert. denied, 348 Conn. 915, 303 A.3d 603 (2023); see also *Williams* v. *Commissioner of Correction*, supra, 223 Conn. App. 760–61.

Next, we set forth the legal principles underlying this claim. " '[T]he specific intent to kill is an essential element of the crime of murder.' " *State* v. *Bharrat*, 129 Conn. App. 1, 7, 20 A.3d 9, cert. denied, 302 Conn. 905, 23 A.3d 1243 (2011); see also *Bharrat* v. *Commissioner of Correction*, 167 Conn. App. 158, 168, 143 A.3d 1106, cert. denied, 323 Conn. 924, 149 A.3d 982 (2016). The defense of diminished capacity pertains to this element. See, e.g., *State* v. *Pagano*, 23 Conn. App. 447, 449, 581 A.2d 1058, cert. denied, 217 Conn. 802, 583 A.2d 132 (1990). Stated differently, "[t]he doctrine of diminished capacity means that if the defendant, because of a limited or impaired mental capacity, did not have the specific intent to commit the acts which comprise the crime

[charged] because of a limited or impaired mental capacity, then the element of intent would not have been proven in this case." (Internal quotation marks omitted.) *State* v. *J.M.F.*, 170 Conn. App. 120, 183, 154 A.3d 1, cert. denied, 325 Conn. 912, 159 A.3d 230 (2017). Thus, "[e]vidence [regarding a defendant's mental capacity] is admitted not for the purpose of exempting a defendant from criminal responsibility, but as bearing upon the question of whether he possessed, at the time he committed the act, the necessary specific intent, the proof of which was required to obtain a conviction." (Internal quotation marks omitted.) *State* v. *Bharrat*, supra, 7.

In the present case, counsel used the services of Selig to evaluate the petitioner four days after the shooting of Bagshaw. Additionally, other medical professionals, including Mantell, evaluated the petitioner prior to his guilty plea.[9] Canning requested that the evaluations include among other things, whether the petitioner had a viable diminished capacity defense. We agree with

[9] We note that the list of exhibits from the habeas trial indicates that the reports of various medical providers are for identification only. At the start of the habeas trial, the petitioner's counsel indicated that she was not sure if the reports she had were, in fact, the same as those entered into evidence during the guilt phase of the petitioner's criminal trial. The habeas court agreed to leave the hearing open for a period of time to allow the petitioner's counsel to locate and confirm that these reports were admitted into evidence at the criminal trial.

On January 27, 2022, the habeas court issued the following order: "The petitioner lodged additional documents under seal on a flash drive pursuant to court order. The documents are from the petitioner's underlying criminal trial and replace certain of the petitioner's exhibits that were marked for identification at the habeas trial on [November 10, 2021]. The exhibits marked for identification in the habeas trial remain marked for identification only. The lodged documents are marked full exhibits in the habeas trial [including the sealed reports of Anne Phillips and Peter Zeman]. The exhibits listed herein are sealed pursuant to the protective order, attached hereto, issued by *Newson, J.*, on [December 23, 2021]. Until further order of the court, the exhibits listed in this order shall remain sealed and are available only to the parties, their counsel and the court."

the habeas court, therefore, that the petitioner failed to substantiate his claim of deficient performance on the basis of failure to raise or investigate a diminished capacity defense prior to his guilty plea. Simply put, the petitioner presented no evidence in the habeas trial to support his claim. Rather, as the habeas court observed, "the defense left no proverbial stone unturned." Specifically, counsel employed the services of medical professionals to evaluate the mental status of the petitioner, including whether he had a diminished capacity at the time the crimes were committed. Following these evaluations, there was little evidence to support a diminished capacity defense. Furthermore, as we previously concluded in this opinion, counsel then made the strategic choice to plead guilty in an attempt to present a mitigating factor to prevent the imposition of the death penalty.[10] See, e.g., *Bharrat* v. *Commissioner of Correction*, supra, 167 Conn. App. 167–68. For these reasons, we conclude that the habeas court properly concluded that the petitioner failed to establish that his counsel provided deficient performance with respect to this issue, and, therefore, this claim alleging ineffective assistance of counsel must fail.

III

The petitioner next claims that the court improperly concluded that his counsel did not provide ineffective assistance by failing to raise the issue of his competency at the October 22, 1992 hearing, at which he elected a three judge panel for the guilt phase of his criminal trial, and at the December 10, 1992 hearing, at which he pleaded guilty.[11] Specifically, he argues that, as to

[10] We note that, during the penalty phase, the jury rejected the petitioner's claim of diminished capacity as a mitigating factor. See General Statutes (Rev. to 1991) § 53a-46a (g).

[11] We recognize that an individual's competence may fluctuate over a period of time. See, e.g., *In re Kaleb H.*, 306 Conn. 22, 34 n.11, 48 A.3d 631 (2012).

the former, his responses to the court's questions during the canvass indicated that his competency was in doubt, and therefore his counsel should have raised this issue at that time. As to the latter, the petitioner contends that his counsel should have raised the issue of his competency to plead guilty in addition to the claim that he was incompetent to stand trial. We are not persuaded by the petitioner's arguments and conclude that he has failed to demonstrate prejudice with respect to this claim.

At the outset, we set forth the applicable legal principles regarding the prejudice prong of the *Strickland* standard. "An evaluation of the prejudice prong involves a consideration of whether there is a reasonable probability that, absent the errors, the [fact finder] would have had a reasonable doubt respecting guilt. . . . A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . We do not conduct this inquiry in a vacuum, rather, we must consider the totality of the evidence before the judge or jury. . . . Further, we are required to undertake an objective review of the nature and strength of the state's case. . . . As our Supreme Court [has explained], [s]ome errors will have had pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. . . . [A] court making the prejudice inquiry must ask if the [petitioner] has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. . . . Notably, the petitioner must meet this burden not by use of speculation but by demonstrable realities." (Internal quotation marks omitted.) *Hilton* v. *Commissioner of*

*Correction*, 225 Conn. App. 309, 327–28, 315 A.3d 1135 (2024).

Next, we identify the relevant legal principles regarding the competency of a criminal defendant. As our Supreme Court observed in the petitioner's direct appeal, "[w]e begin with the undisputed principle that the guilty plea and subsequent conviction of an accused person who is not legally competent to stand trial violates the due process of law guaranteed by the state and federal constitutions. . . . Connecticut jealously guards this right. Therefore, [t]his constitutional mandate is codified in [General Statutes (Rev. to 1991)] § 54-56d (a), which provides that [a] defendant shall not be tried, convicted or sentenced while he is not competent. . . .

"[A] defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense. General Statutes (Rev. to 1991) § 54-56d (a). . . . [T]he test for competency must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him. . . . Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial. . . .

"Although [General Statutes (Rev. to 1991)] § 54-56d (b) presumes the competency of defendants, when a reasonable doubt concerning the defendant's competency is raised, the trial court must order a competency examination. . . . Thus, [a]s a matter of due process, the trial court is required to conduct an independent inquiry into the defendant's competence whenever he makes specific factual allegations that, if true, would

constitute substantial evidence of mental impairment. . . . Substantial evidence is a term of art. Evidence encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is substantial if it raises a reasonable doubt about the defendant's competency . . . . The trial court should carefully weigh the need for a hearing in each case, but this is not to say that a hearing should be available on demand. The decision whether to grant a hearing requires the exercise of sound judicial discretion." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *State* v. *Johnson*, supra, 253 Conn. 20–22; see also *Moye* v. *Commissioner of Correction*, 166 Conn. App. 707, 720, 142 A.3d 424 (2016).

We emphasize, however, that incompetence is not defined by the presence of mental illness alone. See *Taylor* v. *Commissioner of Correction*, 284 Conn. 433, 451–52, 936 A.2d 611 (2007). A defendant may have a mental illness and still be able to understand the charges against him and assist in his defense. Id.; see also *State* v. *Burgos*, 170 Conn. App. 501, 521, 155 A.3d 246, cert. denied, 325 Conn. 907, 156 A.3d 538 (2017).

As previously noted, Judge Corrigan held a hearing on October 22, 1992, to consider the petitioner's motion to change his election from a jury trial to a three judge panel. During this proceeding, the petitioner stated that he had taken prescription drugs such as sleeping pills and body tranquilizers within the prior twelve hours; nevertheless, he informed Judge Corrigan that he felt "pretty good." Judge Corrigan inquired whether the petitioner's counsel had informed him that the court or the state could object to the type of fact finder with respect to the penalty phase, and he responded: "I don't think so but I'm pretty much sure the state's going to do pretty much whatever they want to do. They've done

it from the start, they'll do it today, and—I'm just along for the ride." The petitioner further acknowledged that he was aware that there was no "automatic right to a trial, on the penalty phase, to . . . a three judge panel . . . ." At the conclusion of the cavass, Judge Corrigan stated: "In view of the motion and remarks of the [petitioner] concerning the motion, his knowledge and apparent competence and capacity to understand the questioning of the court—and the lack of objection by the state—and a failure to show any delay in the course of a trial, the court grants the motion . . . ."

At the start of the December 10, 1992 hearing, counsel moved for an evaluation pursuant to General Statutes (Rev. to 1991) § 54-56d to determine whether the petitioner was competent to stand trial. The principal basis for this request was Mantell's December 9, 1992 letter. The trial court responded that the petitioner previously had been determined to be competent at the October 22, 1992 hearing, and Mantell's letter did not change that determination. The motion for such an evaluation, therefore, was denied. The petitioner then informed the trial court of his intention to plead guilty. After the state's detailed summary of the facts and an extensive plea canvass, the trial court found the petitioner's plea was made knowingly, intelligently, and voluntarily with a full understanding of the crimes charged, their possible penalties, and the consequences of his plea after adequate advice and assistance of counsel.

In his direct appeal, the petitioner claimed that the trial court improperly denied his motions for a competency examination, including the one made on December 10, 1992.[12] *State* v. *Johnson*, supra, 253 Conn. 11. Our Supreme Court concluded that, although the trial

---

[12] Our Supreme Court also considered the petitioner's arguments regarding the competency issue raised on March 3, 4 and 9, 1993. *State* v. *Johnson*, supra, 253 Conn. 29–31.

court had applied an incorrect evidentiary standard to the requests for a competency hearing, this error did not deprive the petitioner of his due process rights. Id., 12–13. Specifically, it explained that "the trial court improperly required the [petitioner] to provide clear and convincing evidence of incompetency in his motion for a competency evaluation. Additionally, because the evidence proffered by the [petitioner] raised a reasonable doubt as to the [petitioner's] competency, a competency examination was justified in this case." Id., 23–24.

Our Supreme Court then considered whether the denial of a competency examination deprived the petitioner of his right to due process because he was incompetent to stand trial. Id., 25. It determined that the denial of a competency hearing amounted to harmless error. Id. At the outset of this analysis, the court noted that the degree of competency required to stand trial is the same as the degree of competency required to plead guilty. Id., 26. "In the present case, the canvass of the [petitioner] amply supports the trial court's finding that the [petitioner] was competent to plead guilty. . . . Throughout the canvass the [petitioner] demonstrated his clear understanding of the charges against him and the implications of his guilty plea. The [petitioner] provided appropriate and coherent responses to the court's questions and indicated that he had consulted with defense counsel regarding various aspects of his guilty plea. Furthermore, the [petitioner] paused repeatedly during the lengthy canvass to consult with counsel before answering specific questions. Thus, the record of the canvass establishes that the [petitioner] comprehended the proceedings and was able to consult with and assist counsel in the presentation of his case. Accordingly, the [petitioner] was competent to plead guilty. . . . Thus, the trial court's extensive canvass of the [petitioner], prior to accepting his guilty plea,

necessarily included a determination that the [petitioner] was competent. . . . Because the same competency standard applied to both determinations and because the canvass occurred immediately after defense counsel raised the issue of competency, implicit in the trial court's conclusion that the [petitioner] was competent to plead guilty is its finding that the [petitioner] was also competent to stand trial." (Citations omitted; footnotes omitted; internal quotation marks omitted.) Id., 27–29.

## A

In the present case, the petitioner claims that his counsel were ineffective in not raising the issue of his competency to plead guilty at the October 22, 1992 proceeding. In rejecting this claim, the court concluded that it "does not agree that the October 22 transcript supports the contention that the petitioner was not competent. The petitioner clearly told the court that he felt 'pretty good.' . . . The petitioner has not shown that counsel were deficient for failing to object to the October 22 canvass, which only has a tangential connection to the actual guilty pleas, nor that he was prejudiced. The claim of ineffective assistance of counsel must fail."

On appeal, the petitioner asserts that his responses during the October 22, 1992 canvass demonstrated that "this competency was at best questionable . . . ." As a result, he contends, counsel should have raised the competency issue at this proceeding. The petitioner further argues that, "[a]t the very least, calling into question the petitioner's competency during the October 22, 1992 canvass would have made it more difficult for the trial court to rely on it during [his] later plea. In other words, if the petitioner's competency was in doubt during the October 22, 1992 canvass, the trial court cannot then rely on that canvass as proof and

evidence that [he] was competent during his December 10, 1992 plea canvass." The respondent counters that the petitioner's counsel had no evidence to support this claim at the October 22, 1992 proceeding. With respect to the prejudice prong, the respondent claims, inter alia, that, even if counsel had raised the competency issue at the October 22, 1992 hearing, the court likely would not have ordered an examination and, if it had, the petitioner would not have been found incompetent. We agree with the respondent that the petitioner failed to demonstrate prejudice and, therefore, this claim of ineffective assistance of counsel must fail.

During the October 22, 1992 proceeding, the petitioner, in response to a question from the court as to whether he recently had taken any medication, alcohol or drugs, stated that he had taken "sleeping pills, body tranquilizers . . . things to help me sleep" within the past twelve hours. The petitioner then asserted that he "felt pretty good," did not have any problems hearing the court, and was able to understand the court's questions. After a further colloquy regarding the election of a three judge panel for the guilt phase of his criminal trial, Judge Corrigan concluded: "In view of the motion and remarks of the [petitioner] concerning the motion, his knowledge and *apparent competency and a capacity to understanding the questions* . . . the court grants the motion . . . ." (Emphasis added.)

"Connecticut appellate courts have repeatedly held that a trial court may not be required to order a competency examination when the defendant's canvass supports a finding of competency." *State* v. *Silva*, 65 Conn. App. 234, 249, 783 A.2d 7, cert. denied, 258 Conn. 929, 783 A.2d 1031 (2001); see also *State* v. *DesLaurier*, 230 Conn. 572, 590, 646 A.2d 108 (1994). Indeed, this court specifically has recognized that "[t]he trial judge is in

a particularly advantageous position to observe a defendant's conduct during a trial and has a unique opportunity to assess a defendant's competency. A trial court's opinion, therefore, of the competency of a defendant is highly significant." (Internal quotation marks omitted.) *State* v. *Ducharme*, 134 Conn. App. 595, 602, 39 A.3d 1183, cert. denied, 305 Conn. 905, 44 A.3d 181 (2012).

Furthermore, had defense counsel requested a competency examination, the petitioner would have been required to present substantial evidence that raised a reasonable doubt about his competency, rather than mere allegations of incompetency. See *State* v. *Kendall*, 123 Conn. App. 625, 650–51, 2 A.3d 990, cert. denied, 299 Conn. 902, 10 A.3d 521 (2010). He failed to present any such evidence to the habeas court that would have supported his contention that he likely would have been found incompetent at the October 22, 1992 hearing. We emphasize that the petitioner bears the burden of demonstrating prejudice not with mere speculation but rather with " 'demonstrable realties.' " *Hilton* v. *Commissioner of Correction*, supra, 225 Conn. App. 328. For these reasons, we conclude that this claim of ineffective assistance counsel with respect to the October 22, 1992 hearing must fail.

B

Next, we consider the petitioner's claim that his counsel were ineffective in failing to object to his pleading guilty at the December 10, 1992 proceeding on the basis of lack of competency. He acknowledges that, at this hearing, his counsel claimed that he was incompetent to stand trial but asserts that they also should have raised the issue of, and challenged, his competency to plead guilty. The respondent counters, inter alia, that, because our Supreme Court determined that the petitioner's rights to due process were not violated by the

determination of the criminal court that he was competent to stand trial, and that the same measure of competency applied to the evaluation of his guilty plea, which was made at the same time, the petitioner cannot establish prejudice. We agree.

At the outset of the December 10, 1992 proceeding, the petitioner's counsel moved for a competency evaluation pursuant to General Statutes (Rev. to 1991) § 54-56d. The basis of this motion was Mantell's December 9, 1992 letter. As noted, Judge Corrigan remarked that he had found the petitioner to be competent at the October 22, 1992 proceeding and that Mantell's letter did not alter that conclusion. Judge Corrigan ultimately denied counsel's motion for a competency examination.

On appeal, our Supreme Court explained that the standard of competency to stand trial was the same degree of competency required to plead guilty. *State* v. *Johnson,* supra, 253 Conn. 26. It further determined that the December 10, 1992 canvass supported the court's finding that the petitioner was competent to plead guilty. Id., 27. Furthermore, "[b]ecause the same competency standard applied to both determinations and because the canvass occurred immediately after defense counsel raised the issue of competency, implicit in the trial court's conclusion that the [petitioner] was competent to plead guilty is its finding that the [petitioner] was also competent to stand trial." Id., 29.

Our Supreme Court previously determined that the petitioner was competent at the time of his December 10, 1992 guilty plea. The petitioner has not presented any additional evidence regarding his competency, or lack thereof, on December 10, 1992. As a result, he has failed to sustain his burden of establishing prejudice by demonstrable realities. Accordingly, this claim of ineffective assistance of counsel fails.

## IV

The petitioner finally claims that the court improperly concluded that counsel did not provide ineffective assistance when they incorrectly advised him that the court would not accept his guilty plea after the issue of his competency had been raised at the same proceeding.[13] Specifically, he argues that, as a result of this advice, his plea was not knowingly, intelligently and voluntarily made. The respondent contends, inter alia, that the factual predicate for this claim, that counsel informed the petitioner that the court could not accept his plea after requesting a competency evaluation, did not exist and that he failed to demonstrate prejudice because, despite any such purportedly improper advice, the "petitioner made the personal decision to plead guilty to spare the victim's family any added grief and to use such a plea as a mitigating factor at sentencing."[14] We agree with the respondent that the petitioner has failed to establish the factual predicate for this claim, and therefore it fails.

During the habeas trial, the petitioner testified that he "was advised that if [he pleaded] guilty that there would be no way that the court would accept a guilty plea from a person whose competency has been raised [previously]." The petitioner also stated that he pleaded guilty on the advice of counsel, but they did not inform him that, as a result, he could be sentenced to life imprisonment or that he was waiving his right to appeal any issues arising during the guilt phase. Finally, the petitioner claimed that, had counsel explained that the court could accept the plea even though a competency

---

[13] To the extent that the petitioner also argues that his counsel's purportedly improper advice caused him to plead guilty to a capital offense without receiving any benefit, we have considered and rejected this contention in part I of this opinion.

[14] We note that, despite this claim, as discussed previously, the petitioner was thoroughly canvassed by the trial court before his guilty plea was accepted.

evaluation had been requested, he would not have pleaded guilty.

Canning testified that he could not remember why he advised the petitioner to plead guilty and thought that he would have been ready to proceed to a trial if necessary. He could not recall whether he advised the petitioner that the court would not accept his guilty plea because a request for a competency evaluation had been made at the same proceeding, although there was a "good possibility that that actually happened."

After considering the evidence, the court rejected the petitioner's testimony that he did not want to plead guilty. It concluded that there was no evidence to support the petitioner's contention that he was not competent. Furthermore, the court specifically discredited the petitioner's testimony that counsel had told him that the court would not accept his guilty plea after the competency issue was raised. The court further noted that Canning's testimony regarding this issue was "highly speculative at best and not based on clear recollections of events that transpired about thirty years ago." The habeas court also noted that Canning had testified that he had discussed entering a guilty plea with the petitioner. Finally, it concluded: "There being no credible evidence that counsel was ineffective for advising the petitioner that the court would not accept his guilty plea, this final basis must also be denied. The petitioner has neither shown the required deficient performance nor how he was prejudiced."

This court must defer to the habeas court's weighing of the facts and determinations of credibility. See *LaSalle* v. *Commissioner of Correction*, 227 Conn. App. 520, 528, 321 A.3d 499 (2024); *Angel C.* v. *Commissioner of Correction*, 226 Conn. App. 837, 848, 319 A.3d 168, cert. denied, 350 Conn. 908, 323 A.3d 1091 (2024). Here, the habeas court disbelieved the petitioner's testimony

that his counsel had told him that the trial court would not accept his guilty plea after there was a request for a competency evaluation. The factual predicate for his claim, therefore, does not exist. Furthermore, as we have noted previously in this opinion, the petitioner failed to sustain his burden of demonstrating prejudice by establishing that he would not have pleaded guilty had he been advised as he claims he should have been. For these reasons, we conclude that this claim is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.